IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NORTHERN TRUST, NA,                )    CIVIL NO. 11-00531 LEK-BMK
                                   )
            Plaintiff,             )
                                   )
      vs.                          )
                                   )
KENNETH I. WOLFE,                  )
                                   )
            Defendant.             )
_____   )


**ORDER GRANTING NORTHERN TRUST'S MOTION TO DISMISS
DEFENDANT KENNETH I. WOLFE'S COUNTERCLAIM AND DENYING
NORTHERN TRUST'S MOTION FOR SUMMARY JUDGMENT AS TO
THE COMPLAINT FILED HEREIN ON AUGUST 30, 2011,
INTERLOCUTORY DECREE OF FORECLOSURE, AND ORDER OF SALE**

          Before the Court are: Plaintiff/Counterclaim Defendant

Northern Trust, NA's ("Northern Trust") Motion to Dismiss

Defendant Kenneth I. Wolfe's Counterclaim ("Motion to Dismiss"),

filed on December 7, 2011; and Northern Trust's Motion for

Summary Judgment as to the Complaint Filed Herein on August 30,

2011, Interlocutory Decree of Foreclosure, and Order of Sale

("Motion for Summary Judgment"), filed on January 26, 2011.

Defendant/Counterclaimant Kenneth I. Wolfe ("Wolfe") filed a

memorandum in opposition to each motion on April 16, 2012.

Northern Trust filed a reply in support of each motion on

April 23, 2012.  These matters came on for hearing on May 7,

2012.  Appearing on behalf of Northern Trust were Jonathan Lai,

Esq., and Michael Bird, Esq., and appearing on behalf of Wolfe

was John Harris Paer, Esq.   After careful consideration of the motions, supporting and opposing memoranda, and the arguments of counsel, Norther Trust's Motion to Dismiss is HEREBY GRANTED and Northern Trust's Motion for Summary Judgment is HEREBY DENIED for the reasons set forth below.

### BACKGROUND

Northern Trust filed the instant action on August 30, 2011 based on diversity jurisdiction.  [Complaint at ¶ 3.]  The Complaint seeks foreclosure of property securing a loan that Northern Trust made to Wolfe.

Wolfe filed his Answer to Complaint ("Answer"), with a Setoff and Counterclaim ("Counterclaim"), on November 17, 2011. [Dkt. no. 12.]  The Counterclaim asserts the following claims: unfair and deceptive acts and practices ("UDAP") in violation of Haw. Rev. Stat. Chapter 480 ("Count I"); unconscionability ("Count II"); fraud and misrepresentation ("Count III"); negligence ("Count IV"); breach of contract ("Count V"); violation of the duty of good faith and fair dealing ("Count VI"); and promissory estoppel ("Count VII").

I.   **Motion for Summary Judgment**

Wolfe executed a Promissory Note in favor of Northern Trust in the principal amount of $1,080,000.00, at an interest rate of 7.000% ("the Note").  The date of the Note is August 22,

2007.[1]  [Motion for Summary Judgment, Aff. of Shawn T. Roland

("Roland Aff."), Exh. A at 1.]  The Note states, in pertinent

part:

> PAYMENT.  I will pay this loan in one principal
> payment of $1,080,000.00 plus interest on
> August 22, 2010.  This payment due on August 22,
> 2010, will be for all principal and all accrued
> interest not yet paid.  In addition, I will pay
> regular monthly payments of all accrued unpaid
> interest due as of each payment date, beginning
> September 22, 2007, with all subsequent interest
> payments to be due on the same day of each month
> after that. . . .

[Id.]  The Note is secured by a Mortgage on Maniniowali Phase II,

Lot 17, Kailua Kona, Hawai`i ("the Property").  The Mortgage was

recorded in the Bureau of Conveyances on September 7, 2007 as

Document Number 2007-159365.  [Roland Aff., Exh. B at 1.]

Northern Trust presented an affidavit from Shawn T.

Roland, the Second Vice President for "The Northern Trust Company

as successor by merger to Northern Trust, NA ('Northern Trust

[Company]')."  [Roland Aff. at ¶ 1.]  Roland states that Wolfe is

in default under the terms of the Note and Mortgage because Wolfe

has refused to make his required full payment, in spite of "due

and proper demand made upon Defendant Wolfe for payment of the

amounts due and owing to Northern Trust [Company]"  [Id. at ¶¶ 4-

5.]  Roland certifies that Northern Trust Company is still the

---

[1] Wolfe, however, alleges that the date of the transaction
at issue in this case was "[o]n or about August 29, 2007[.]"
[Mem. in Opp. to Motion for Summary Judgment, Decl. of Kenneth I.
Wolfe ("Def. Decl.") at ¶ 2.]

holder of the Note and Mortgage and that, as of January 25, 2012, Wolfe owed Northern Trust Company the following amounts:

| | |
|---|---|
| Principal Balance: | $ 1,069,079.32 |
| Interest to 08/30/11: | $    59,311.93438 |
| Interest from 08/31/11 to 01/25/12: | $    34,444.857 |
| Accumulated Late Charges: | $        27.63 |
| **TOTAL:** | **$ 1,162,863.471** |

[Id. at ¶ 7, Exh. C (Pay-Off Statement dated 1/25/12).] Interest until August 30, 2011 accrued at 5.000% per annum, resulting in a per diem rate of $146.4492219. Effective August 31, 2011, the interest rate was 8.000% per annum, resulting in a per diem rate of $234.3187551. In addition, Northern Trust Company also continues to accrue attorneys' fees and costs, which are also secured by the Note and Mortgage. [Roland Aff. at ¶¶ 8-9.] Roland states that, under the terms of the Note and Mortgage, Northern Trust Company is entitled to foreclose upon its first mortgage lien. [Id. at ¶ 11.]

Northern Trust filed a First Amended Notice of Pendency of Action ("Notice") on August 31, 2011. [Dkt. no. 5.] The Notice was recorded in the Bureau of Conveyances on September 1, 2011 as Document Number 2011-140442. [Motion for Summary Judgment, Decl. of Michael C. Bird ("Bird Decl.") at ¶ 8.] Northern Trust asserts that all parties to the foreclosure of the Mortgage have been named and served. [Id. at ¶ 9.]

In the Motion for Summary Judgment, Northern Trust argues that it served the Complaint on Wolfe via certified mail,

4

postage prepaid, return receipt requested to Wolfe's address in
New York, and there is no record that Wolfe is a servicemember to
whom the Servicemembers Civil Relief Act of 2003 applies.  [Mem.
in Supp. of Motion for Summary Judgment at 6-7 (citing Bird
Decl., Exhs. 2-3).]  Further, Northern Trust does not need to
name any other parties, and therefore,

> any and all other or further encumbrances or
> purchasers of the Mortgaged Property, or any part
> thereof, whose interest arises by, through and
> under Defendant Wolf, and from and after the
> recording of Northern Trust's First Amended NOPA
> should be perpetually barred from all rights,
> title, and interest in the subject property, or
> any part thereof.

[Id. at 8 (citing Haw. Rev. Stat. § 634-51).]

     Northern Trust argues that Wolfe's failure to make the
full payment required under the Note and Mortgage, and Wolfe's
failure to respond to due and proper demand for the payment of
the amounts owed, constitute default under the Note and Mortgage.
[Id. at 8-9.]  Northern Trust argues that it is entitled to
foreclose upon its first mortgage lien and its interest in the
Property and that it is entitled to its reasonable attorneys'
fees and costs associated with the foreclosure.  [Id. at 9
(citing Roland Aff., Exh. A (Note); Exh B. (Mortgage) at pg. 4,
¶ 16 ("Payment Default"), pg. 4, ¶ 18 ("Break Other Promises"),
pg. 5 ¶ 14 ("Judicial Foreclosure"), pg. 5 ¶ 18 ("Other
Remedies"), pg. 5 ¶ 19 ("Sale of the Property"), pg. 6 ¶ 3
("Attorneys' Fees; Expenses")).]

Northern Trust argues that Haw. Rev. Stat. §§ 667-1 through 667-4 provide for judicial foreclosure of a mortgage and, based on the pleadings and submissions with the Motion for Summary Judgment, Northern Trust has an enforceable claim. Northern Trust also argues that there are no genuine issues of material fact, and therefore it is entitled to judgment as a matter of law.  In addition, Northern Trust requests the entry of final judgment in its favor on the Complaint pursuant to Fed. R. Civ. P. 54(b), and the entry of a separate judgment on the Counterclaim pursuant to Fed. R. Civ. P. 58.  [Id. at 10.]

A.   **Wolfe's Opposition**

In his memorandum in opposition, Wolfe states that Kurt Nielsen ("Nielsen"), the loan broker for the transaction at issue, led Wolfe to believe that Nielsen was a dual agent, representing both Northern Trust and Wolfe.  Nielsen prepared Wolfe's loan application and other documents necessary for Wolfe's application and the closing of the transaction.  [Def. Decl. at ¶ 3.]  Nielsen also led Wolfe to believe that, when the loan matured, Wolfe would be able to obtain a "permanent financing" arrangement from Northern Trust without Wolfe having to qualify for a loan again.  According to Wolfe, were it not for that understanding, he would have found a lender who could guarantee permanent financing.  Thus, Wolfe entered into the loan in reliance on those representations.  [Id. at ¶¶ 5-6.]

6

Wolfe made all monthly payments as they became due, until the final payment became due.  When the loan became due in August 2010, Wolfe offered to continue making the mortgage payments as he had been doing.  According to Wolfe, Northern Trust told him to send in his financial documents and that they would work out a new loan or other permanent financing plan.  Northern Trust said that it did not intend to foreclose.  [Id. at ¶¶ 9-12.]

Northern Trust subsequently informed Wolfe that the loan to value ratio had changed and that Wolfe would have to either pay $300,000 or offer new collateral for that amount to obtain a permanent financing arrangement.  Wolfe protested, but Northern Trust refused to honor its prior representations that it would arrange for permanent financing.  All Northern Trust offered was a loan extension in exchange for one percent of the loan amount.  Wolfe objected to the amount, and Northern Trust never granted a loan extension or other permanent financing. [Id. at ¶¶ 13-15.]

According to Wolfe, at the time of the permanent financing dispute, the Property was worth approximately $1,000,000.00.  The lot next to the Property, which Wolfe states was inferior to the Property, sold for $1,000,000.00.  Wolfe offered to either give Northern Trust a deed in lieu of a foreclosure or allow a short sale, but Northern Trust refused.

7

[Id. at ¶¶ 17-19.]  Northern Trust also refused to accept continuing payments on the Mortgage.  [Id. at ¶ 21.]

After September 2010, Wolfe did not hear from Northern Trust until Wolfe received service of a notice of non-judicial foreclosure in early May 2011.  Wolfe did not oppose the non-judicial foreclosure and reiterated his offer to allow a short sale or to grant a deed in lieu of foreclosure, but Northern Trust continued to refuse.  [Id. at ¶¶ 22-23.]

Wolfe asserts that he has suffered damages because of Northern Trust's actions.  He is faced with losing the Property and a possible deficiency.  In addition, he has incurred attorneys' fees and various charges, such as postage and travel costs, in responding to Wolfe's actions.  [Id. at ¶¶ 24-25.]

Wolfe argues that the Court should deny the Motion for Summary Judgment because of the claims in the Counterclaim.  As to the UDAP claim, Wolfe argues that the following representations by Northern Trust created a likelihood of confusion for a reasonable consumer: 1) in 2007, Northern Trust represented that Wolfe could obtain permanent financing without having to re-qualify; 2) in 2010, Northern Trust represented that it did not intend to foreclose; and 3) Northern Trust proceeded toward foreclosure while simultaneously evaluating Wolfe's request for modification.  Northern Trust failed to honor its representations, which were material, and its actions constituted

8

a "bait and switch". [Mem. in Opp. to Motion for Summary Judgment at 5-6.] Wolfe argues that allegations of a Chapter 480 violation similar to Count I of his Counterclaim were held to be sufficient to withstand motions to dismiss and motions for summary judgment in Tedder v. Deutsche Bank National Trust Co., Civ. No. 11-00083 LEK-KSC, 2012 WL 1028125 (D. Hawai`i Mar. 23, 2012), and Skaggs v. HSBC Bank, N.A., Civ. No. 10-00247 JMS-KSC, 2010 WL 5390127 (D. Hawai`i Dec. 22, 2010), and 2011 WL 3861373 (D. Hawai`i Aug. 31, 2011). Wolfe argues that Count I is viable and sufficiently pled.

Wolfe argues that, in light of Northern Trust's violations of § 480-2, the Note and Mortgage are void pursuant to Haw. Rev. Stat. § 480-12. Wolfe emphasizes that his UDAP claim is not based on fraud, but merely on the confusion created by Northern Trust's actions. Wolfe notes that a void obligation cannot be revived by an assignment. Wolfe urges this Court to deny the Motion for Summary Judgment because Northern Trust cannot foreclose upon a void obligation. [Id. at 7-10.]

As to the unconscionability claim, Wolfe states that this is a defense. The unconscionable term was the false promise to provide Wolfe with permanent financing without re-qualification. [Id. at 11.]

As to the fraud and misrepresentation claim, the fraudulent misrepresentations were the 2007 promise of permanent

9

financing without re-qualification and the 2010 representation that Northern Trust was not going to foreclose.  Wolfe argues that he justifiably relied on these representations and therefore his claims should survive a motion to dismiss or a motion for summary judgment as in Tedder and Skaggs.  [Id.]

As to the negligence claim, Wolfe asserts that Northern Trust owed him a duty to be truthful when making representations to solicit his business.  Wolfe argues that, when a bank makes false promises to its customers, it exceeds its role as a mere money lender.  Northern Trust put him in an unreasonably risky position in which he faces losing the Property and a possible deficiency judgment.  Wolfe emphasizes that he is not asserting a claim based on fiduciary duty.  He also argues that courts have recognized a negligence claim based on a bank's failure to follow Home Affordable Modification Program ("HAMP") guidelines.  [Id. at 11-12 (citing Speleos v. BAC Home Loans Servicing, LP, 755 F. Supp. 2d 304, 310-11 (D. Mass 2010)).[2]]  Wolfe therefore argues that he has asserted a valid defense to the foreclosure.

The breach of contract claim is based upon Northern Trust's promise that Wolfe would be able to obtain permanent

---

[2] Wolfe also cites two decisions without a Westlaw or Lexis citation: In re Cruz, Case No. 10-43793; and Cruz v. Hacienda Associates, LLC and Wells Fargo Bank, Adv. Pro. 11-04006 (Bankr. Mass. Jan. 26, 2011).  [Mem. in Opp. to Motion for Summary Judgment at 12.]  Insofar as Wolfe has neither provided publicly available citations for these cases nor submitted copies of these orders, this Court will not consider them.

financing without additional qualification requirements. Northern Trust breached that agreement, and the breach constitutes a defense to the Motion for Summary Judgment. [Id. at 12-13.]

Wolfe argues that Northern Trust's actions were not in good faith, and he contends that there is a special relationship in this case because of the public interest and the fact that the loan agreement was a contract of adhesion. Wolfe argues that the Ninth Circuit has recognized, albeit in the context of a Truth-in-Lending Act ("TILA") violation, that all consumers are inherently at a disadvantage in loan and credit transactions. Wolfe contends that this principle applies even when the case does not involve a TILA violation. [Id. at 13 (citing Semar v. Platte Valley Fed. Savings and Loan Ass'n, 791 F.2d 699, 705 (9th Cir. 1986)).] Wolfe contends that Northern Trust's breach of the covenant of good faith and fair dealing is a defense to the Motion for Summary Judgment. [Id. at 13-14.]

The promissory estoppel claim is based on Northern Trust's oral promises of that it would grant permanent financing and that it would not foreclose. Wolfe alleges that he justifiably relied on those promises to his detriment. Wolfe argues that the consideration was that he would not have entered into the transaction but for the promise of permanent financing without additional qualification requirements. Wolfe argues that

11

his promissory estoppel claim is a defense to the Motion for Summary Judgment.  [Id. at 14.]

Finally, Wolfe argues that the Roland Affidavit is defective.  Roland is with Northern Trust Company, which Roland states is the successor by merger to Northern Trust, but there is no documentary support for this.  Wolfe argues that Roland does not have personal knowledge of the loan at issue because he was not involved in the loan origination.  Further, Roland did not produce the demand letter to support his claim that Northern Trust made a proper demand.  Wolfe also argues that Exhibit B to the Roland Affidavit "was created for this litigation, and the underlying documents are not attached."  [Id. at 15 (citations omitted).]

Wolfe therefore urges the Court to deny Northern Trust's Motion for Summary Judgment.

**B.    Northern Trust's Reply**

In its reply in support of the Motion for Summary Judgment ("Summary Judgment Reply"), Northern Trust first notes that Wolfe's memorandum in opposition to the Motion for Summary Judgment asserts the same arguments as his memorandum in opposition to the Motion to Dismiss.  Northern Trust therefore incorporates by reference the arguments it presented in its reply in support of the Motion to Dismiss.  [Summary Judgment Reply at 2.]

Northern Trust reiterates that, as a matter of law, it is entitled to summary judgment, interlocutory decree of foreclosure, and a order of sale because: 1) all parties to the foreclosure have been served; 2) Wolfe defaulted under the terms of the Note and Mortgage; and 3) the default entitles Northern Trust to foreclose on the Mortgage.  Northern Trust argues that Wolfe has not identified any genuine disputes of material fact in these areas.  [Id. at 3.]

As to Wolfe's objections to the Roland Affidavit, Northern Trust points out that corporate officers are presumed to have personal knowledge of their corporation's acts, and employees who are familiar with a business's record-keeping practices can testify from personal knowledge about documents that are admissible business records.  Roland therefore does not need to have been a first-hand witness to the transaction at issue in this case.  [Id. at 4-5 (citing Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990); Nadir v. Blair, 549 F.3d 953, 963 (4th Cir. 2008)).]  As to Wolfe's argument that Northern Trust Company is not a party in this action, Northern Trust notes that, because the merger occurred after the filing of the Complaint in this action, Fed. R. Civ. P. 25(c) does not require that Northern Trust be substituted by its successor-in-interest, unless the Court orders substitution in its discretion. [Id. at 5-6.]  As to Wolfe's argument that there was no demand

13

letter, Northern Trust states that a Notice of Default, Final Demand for Payment and Notice of Acceleration, dated November 19, 2010, was mailed to Wolfe, and Wolfe's former counsel acknowledged receipt thereof in a December 6, 2010 letter.  [Id. at 6 (citing Decl. of Jonathan W.Y. Lai ("Lai Decl."), Exhs. A, B).]

Northern Trust argues that Wolfe has not presented any evidence that Nielsen was Northern Trust's agent.  Generally, a mortgage broker is the borrower's agent, and a lender is not liable for the mortgage broker's actions unless there is an agency relationship between the lender and the broker.  [Id. at 7 (some citations omitted) (citing Sandry v. First Franklin Financial Corp., 2011 WL 202285 (E.D. Cal. Jan. 20, 2011); Menashe v. Bank of New York, 2012 WL 397437, at *11 (D. Haw. Feb. 6, 2012)).]  Wolfe has not alleged that Northern Trust manifested any express or implied intent that Nielsen act as its agent, nor does Wolfe allege that Northern Trust led Wolfe to believe Nielsen was its agent, nor does Wolfe allege that Northern Trust ratified Nielsen's actions, representations, or omissions.  If Wolfe has any claims based on the alleged false representation of an agency relationship, they are against Nielsen, not against Northern Trust.  Thus, Nielsen's alleged misrepresentations cannot be imputed to Northern Trust and cannot preclude summary judgment.  [Id. at 8-9.]

Northern Trust emphasizes that Wolfe does not dispute proper service of the Complaint or that he is in default under the Note and Mortgage.  To the extent that Wolfe relies on an alleged agreement for a permanent loan modification, Wolfe has not identified any admissible evidence of a loan modification. There is no genuine issue of material fact regarding his default. Northern Trust reiterates that its claims are enforceable under the terms of the Note and Mortgage and pursuant to Haw. Rev. Stat. §§ 667-1 through 667-4.  [Id. at 10-13.]

Northern Trust therefore urges the Court to grant the Motion for Summary Judgment, including issuing an interlocutory decree of foreclosure and order of sale.  [Id. at 13.]

## II.  **Motion to Dismiss**

In the Motion to Dismiss, Northern Trust notes that the Property is a vacant lot in "an exclusive oceanfront residential community[.]"  [Mem. in Supp. of Motion to Dismiss at 2.]

Northern Trust argues that Count I (UDAP) is not sufficiently pled.  Wolfe has merely recited the elements of a UDAP claim without providing factual allegations to support any of the required elements.  Further, Wolfe's UDAP claim sounds in fraud, and Count I does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  The Court therefore cannot consider the allegations of fraudulent misrepresentations.  Wolfe has not alleged the time, place, and specific content of the

misrepresentations, or the identifies of the parties to the misrepresentations.  Wolfe therefore has not provided Northern Trust with sufficient notice of the claim against it.  Northern Trust urges the Court to dismiss Count I.  [Id. at 6-9.]

Northern Trust emphasizes that unconscionability is not an affirmative claim for relief, but merely a defense to the enforcement of a contract or other legal claim.  Even if Wolfe only asserts unconscionability as a defense, he has not identified the specific terms of an enforceable contract which are unconscionable.  Wolfe has not identified the unconscionable contract or its specifically unconscionable terms.  The Court should therefore dismiss Wolfe's claim/defense.  [Id. at 9-11.]

Wolfe failed to plead Count III (fraud and misrepresentation) with particularity.  Count III is presumably based on the same insufficient allegations of misrepresentations set forth in Count I.  Count III also fails to plead the other elements of a fraud/fraudulent misrepresentation claim.  Wolfe has not provided Northern Trust with fair notice of the grounds Count III is based on, and the Court should dismiss Count III. [Id. at 11-13.]

Northern Trust argues that Count IV (negligence) fails because Wolfe fails to establish that Northern Trust owed him a duty of care.  Lenders generally do not owe their borrowers a duty of care because there is no fiduciary duty and no duty

16

sounding in negligence, and the Counterclaim does not set forth
any allegations establishing an exception to these general rules.
Northern Trust and Wolfe merely had an arms-length business
relationship.  [Id. at 14-15.]  Although Wolfe contends that
Northern Trust had a duty under HAMP not to proceed with
foreclosure while evaluating him for loan modification, there is
no express or implied private right of action for a violation of
HAMP.  [Id. at 15-16 (citing Cleveland v. Aurora Loan Services,
LLC, No. C 11-0773 PJH, 2011 WL 2020565, at *4 (N.D. Cal. May 24,
2011); Singh v. Wells Fargo Bank, No. 1:10 CV 1659 AWI SMS, 2011
WL 66167, at *5 (E.D. Cal. Jan. 7, 2011)).]  Moreover, even if
there was a cause of action for a HAMP violation, the
Counterclaim does not allege that Wolfe was eligible for a HAMP
loan modification, that Northern Trust approved him for a HAMP
modification, or that Northern Trust agreed to suspend
foreclosure proceedings.  [Id. at 16.]  Northern Trust also
argues that Wolfe failed to sufficiently plead the remaining
requirements of a negligence claim.  Northern Trust therefore
urges the Court to dismiss Count IV.  [Id. at 16-17.]

        As to Count V (breach of contract), Northern Trust
emphasizes that the claim is based on an alleged oral contract
that Northern Trust would suspend foreclosure proceedings.
Northern Trust argues that there is no oral contract because
there was a lack of consideration.  [Id. at 17-18.]  Further, if

there was such an agreement, it would be an agreement to modify the Mortgage.  The Mortgage is subject to the statute of frauds and requires a writing.  An agreement to modify the Mortgage therefore also requires a writing.  [Id. at 18-19 (citing Secrest v. Security National Mortgage Loan Trust 2002-2, 167 Cal. App. 4th 544, 553, 84 Cal. Rptr. 3d 275, 282 (2008)).]  The Counterclaim does not allege there was a writing to evidence the oral contract for a permanent loan modification, and the Counterclaim fails to sufficiently describe the alleged oral contract.  In addition, Wolfe fails to sufficient plead the other requirements of a breach of contract claim.  Count V merely recites the elements of breach of contract and does not provide Northern Trust with sufficient notice.  Northern Trust urges the Court to dismiss Count V.  [Id. at 19-20.]

     As to Count VI (breach of the duty of good faith and fair dealing), Northern Trust argues that there is no implied covenant of good faith and fair dealing without an enforceable contract.  Further, there is no independent cause of action based on the implied covenant of good faith and fair dealing.  [Id. at 20 (citing Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1036-38 (D. Haw. 2006)).]  Count VI is based on the alleged oral contract to modify the Mortgage alleged in Count V.  Thus, insofar as Count V fails, Count VI should fail as well.  Even assuming, *arguendo*, that Count V

18

alleges a contract upon which Wolfe can state a breach of contract claim, Count VI still fails because Wolfe does not allege any facts showing that Northern Trust violated the duty of good faith and fair dealing.  Northern Trust therefore urges the Court to dismiss Count VI.  [Id. at 21-22.]

As to Count VII (promissory estoppel), Wolfe has only alleged vague and indefinite promises regarding future refinancing and the lack of foreclosure proceedings.  The promises for a promissory estoppel claim must be clear and unambiguous.  Even if the Court assumes that a Northern Trust representative actually made the statements alleged in the Complaint, the statements must be clear and unambiguous to state a promissory estoppel claim.  Wolfe has not identified clear and unambiguous statements.  [Id. at 22-23 (citing Aquilar v. International Longshoremen's Union Local #10, 966 F.2d 443, 446 (9th Cir. 1992)).]  Wolfe has only recited the elements of a promissory estoppel claim, which is insufficient to state a claim upon which relief can be granted.  Northern Trust therefore urges the Court to dismiss Count VII.  [Id. at 24.]

Thus, Northern Trust argues that the Court should dismiss the Counterclaim in its entirety.

A.   **Wolfe's Opposition**

Wolfe's memorandum in opposition to the Motion to Dismiss raises the same arguments as in his memorandum in

19

opposition to the Motion for Summary Judgment.

    B.   **Northern Trust's Reply**

       In its reply in support of the Motion to Dismiss ("Dismissal Reply"), Northern Trust states that the core of Wolfe's Counterclaim is his allegation that he was promised a permanent loan modification. Northern Trust, however, argues that it never promised Wolfe a loan modification because Northern Trust is not responsible for the representations or omissions of the loan broker who allegedly made that promise to Wolfe. Wolfe has not pled any facts showing any agency relationship between Northern Trust and the broker. Northern Trust therefore argues that the Court should dismiss all claims based upon the loan broker's alleged representations or omissions. [Dismissal Reply at 3-4.]

       As to the UDAP claim, Northern Trust argues that Tedder, 2012 WL 1028125, does not support Wolfe's position. The plaintiff in Tedder raised similar allegations to those in the instant case, and this Court dismissed Tedder's UDAP claim without reaching the issue whether such a UDAP violation would render the note and mortgage void. Northern Trust also emphasizes that this district court, including this Court in Tedder, has repeatedly ruled that there is no private right of action for HAMP violations. [Id. at 5-6.] Northern Trust argues that the district court's orders in Skaggs, 2011 WL 3861373 and

2010 WL 5390127, are inapplicable because that case addressed whether a UDAP claim based on the borrower's alleged incapacity was a valid defense to a foreclosure by a holder in due course. In the instant case, Wolfe has not sufficiently pled a UDAP violation, so the issue whether Wolfe's Mortgage is void against a holder in due course is irrelevant.  Although Wolfe recited the elements of UDAP claim, he failed to allege any supporting factual allegations.  This is not enough to state a cognizable claim for relief.  [Id. at 6 & n.3.]  Northern Trust also points out that voiding a mortgage transaction under § 480-12 requires that the plaintiff place the parties in the positions that they held before the transaction in question.  Wolfe has not alleged he can do that.  [Id. at 7.]

        As to the unconscionability claim, Northern Trust reiterates that it is a defense, not an independent claim. Northern Trust argues that it is not clear what contract term Wolfe alleges was unconscionable.  If he is referring to the Mortgage, the Mortgage contains no promise of permanent financing.  To the extent that Wolfe relies upon the oral promise of a permanent loan modification, that agreement is barred by the statute of frauds.  [Id. at 7-8.]

        Northern Trust argues that the fraud and misrepresentation claims fail because they are not pled with the requisite particularity.  Wolfe's reliance on Tedder in support

21

of this claim is also misplaced.  This Court ruled in Tedder that the fraud claim based on alleged misrepresentations about the receipt of documents during the loan modification process was sufficient to survive dismissal.  This Court dismissed Tedder's fraud claim based on an alleged promise of a loan modification because it was insufficiently pled.  Further, a promise regarding a future event cannot support a fraud claim.  [Id. at 8-10.]

As to the negligence claim, Northern Trust reiterates that it owed Wolfe no duty because generally lenders owe no duty to refrain from placing borrowers in loans that they cannot repay.  Northern Trust also argues that Wolfe's reliance on Speleos, 755 F. Supp. 2d at 310-11, is misplaced.  The court in that case recognized that a common law negligence claim cannot be based on a HAMP violation because there is no private right of action.  Under Massachusetts law, however, evidence of a HAMP violation could constitute evidence of a negligence claim.  Wolfe has not identified any Hawai`i statute or case law similarly recognizing that a HAMP violation constitutes evidence of negligence.  [Id. at 10-11.]

As to Count V, which alleges a breach of the oral contract for a permanent loan modification, Northern Trust reiterates its argument that the claim is barred by the statute of frauds.  [Id. at 11-13.]

22

As to Count VI, alleging a violation of the duty of good faith and fair dealing, Northern Trust reiterates that, without a valid agreement to permanently modify the loan, there is no implied covenant of good faith and fair dealing.  As to the Mortgage itself, Northern Trust contends that Wolfe has not identified any term of the Mortgage which Northern Trust allegedly breached.  Northern Trust therefore argues that this Court must dismiss Count VI as a matter of law.  [<u>Id.</u> at 13-14.]

Finally, as to the promissory estoppel claim, Northern Trust argues that Wolfe's memorandum in opposition does not address the defects in the claim that Northern Trust identified in the Motion to Dismiss, and therefore the Court should dismiss Count VII.  [<u>Id.</u> at 14-15.]

Northern Trust urges the Court to grant the Motion to Dismiss.

## DISCUSSION

## I.   Motion for Summary Judgment

In the Motion for Summary Judgment, Northern Trust argues that there are no genuine issues of material fact regarding: Wolfe's breach of the Note; Wolfe's breach of the Mortgage; and Northern Trust's entitlement to relief under the terms of those documents.  Northern Trust therefore argues that it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a) (stating that summary judgment is warranted "if the

23

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

### A.  Northern Trust's Merger

Before the Court addresses the merits of the Motion for Summary Judgment, it must address the issue of the sufficiency of Northern Trust's evidence regarding the merger of Northern Trust, N.A. and The Northern Trust Company.  The primary evidence that Northern Trust relies upon in its Motion for Summary Judgment is the Roland Affidavit and the documents attached thereto.  Roland asserts that he has personal knowledge and can testify as to these matters because he is the Second Vice President for "The Northern Trust Company as successor by merger to Northern Trust, NA . . . ."  [Roland Aff. at ¶ 1.]  Northern Trust, however, did not include any supporting documents regarding the merger.

This Court recognizes that Roland's "personal knowledge and competence to testify are reasonably inferred from [his] position[] . . . ."  See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (holding that the district court reasonably relied on an affidavit by an entity's chairman about the entity's fears and search for potential buyers).  This Court therefore can accept his testimony that a merger occurred and that The Northern Trust Company is the successor to Northern Trust, NA.  This Court can also accept Roland's testimony that he has knowledge of the relevant records of Northern Trust, N.A.

The Roland Affidavit, however, does not state when the merger occurred or the terms thereof, such as whether The Northern Trust Company has assumed all rights and responsibilities arising from outstanding litigation involving Northern Trust, NA.

> In its Summary Judgment Reply, Northern Trust states:

> Effective October 1, 2012,[3] "Northern Trust, N.A.," merged with and into "The Northern Trust Company," an Illinois banking corporation.  As a result of this merger, The Northern Trust Company is the successor-by-merger of Northern Trust, N.A., and is the real party-in-interest in this lawsuit.  See Roland Affidavit at ¶ 1 . . . .  Because the merger occurred *after* Northern Trust, N.A. filed its Complaint, [Fed. R. Civ. P.] 25(c) does not require that Northern Trust, N.A. be substituted by its successor-in-interest, except that this Court may order the transferee to be substituted as a party, if in its discretion, the transferee's presence would facilitate the case.

[Summary Judgment Reply at 5-6 (emphasis in original) (some citations omitted).]  First, to the extent that the Summary Judgment Reply contains factual representations which are not contained within the cited Roland Affidavit, the Court cannot consider those factual representations because Northern Trust did not provide the requisite support.  See Fed. R. Civ. P. 56(c).  Northern Trust did file a Corporate Disclosure Statement on November 17, 2011, stating that "Plaintiff NORTHERN TRUST, NA is a wholly-owned subsidiary of Northern Trust Corporation."  [Dkt. No. 7.]  The Corporate Disclosure Statement, however, does not

---

[3] The Court assumes this is a typographical error and that Northern Trust is referring to October 1, 2011.

provide evidence of the date or terms of the merger.

Northern Trust acknowledges that this Court, in its discretion, may order The Northern Trust Corporation to be substituted for, or joined with, Northern Trust, N.A. if its presence would facilitate the case. This Court, however, cannot determine whether the presence of The Northern Trust Company would facilitate the case without weighing evidence of the terms of the merger.

Although this Court can accept Roland's testimony about, and authentication of, the documents attached to his affidavit, in light of the issue regarding evidence of the merger, this Court cannot make a ruling at this time as to whether Northern Trust, N.A. is able to litigate the claims at issue in this case. The Court now turns to the merits of the Motion for Summary Judgment, to the extent that this Court is able to address the motion on the current record.

B.  **Default**

Wolfe apparently argues that the Court should deny the Motion for Summary Judgment because Northern Trust did not establish his default by presenting evidence that it issued a proper demand letter to him. Roland's unsupported statement that Northern Trust made a proper demand is not sufficient. [Mem. in Opp. to Motion for Summary Judgment at 15.]

Northern Trust responds that it mailed a NOTICE OF DEFAULT, FINAL DEMAND FOR PAYMENT AND NOTICE OF ACCELERATION - Promissory Note and Mortgage dated August 22, 2007; Northern Trust Loan No. (ending in) 743 to Wolfe, and his former counsel acknowledged receipt of the demand letter. [Lai Decl., Exh. A (demand letter), Exh. B (letter dated 12/6/10 to Jonathan W.Y. Lai, Esq., from Mark Van Pernis).] Local Rule 56.1(h), however, states: "Affidavits or declarations setting forth facts and/or authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement. Supplemental affidavits and declarations may only be submitted with leave of court." Northern Trust did not obtain leave of court to submit the Lai Declaration, with its exhibits, in conjunction with the Summary Judgment Reply. This Court therefore declines to consider the demand letter and the letter acknowledging receipt thereof.

The lack of a demand letter, in and of itself, is not fatal to the Motion for Summary Judgment. Northern Trust submitted the Note and Mortgage with the Motion for Summary Judgment. [Roland Aff., Exhs. A, B.] Wolfe did not contest the authenticity of the copy of the Note that Northern Trust submitted. Wolfe's memorandum in opposition to the Motion for Summary Judgment does argue that Exhibit B to the Roland Affidavit "was created for this litigation, and the underlying

27

documents are not attached." [Mem. in Opp. to Motion for Summary Judgment at 15 (citing Hawaii Community Federal Credit Union v. Keka, 94 Haw. 213 (2000); Pacific Concrete Federal Credit Union v. Kauanoe, 62 Haw. 334 (1980)).]  Based on Wolfe's arguments at the hearing, however, it appears that he is directing this challenge to Northern Trust's Pay-off Statement, which is Exhibit C to the Roland Affidavit.  Thus, neither the contents of the Note nor the contents of the Mortgage are in dispute in this case.

The Note states that the principal amount is $1,080,000.00, and the interest rate is 7.000%.  [Roland Aff., Exh. A at 1.]  It also states that the borrower, Wolfe,

> will pay this loan in **one principal payment of $1,080,000.00 plus interest on August 22, 2010.** This payment due on August 22, 2010, will be for all principal and all accrued interest not yet paid.  In addition, [the borrower] will pay regular monthly payments of all secured unpaid interest due as of each payment date, beginning September 22, 2007 . . . .

[Id. (emphasis added).]  Other relevant provisions of the Note provide:

> LATE CHARGE.  If a payment is 18 days or more late, [the borrower] will be charged 5.000% of the unpaid portion of the regularly scheduled payment.
>
> INTEREST AFTER DEFAULT.  Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 3.000 percentage points.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

> DEFAULT.  [The borrower] will be in default under this Note if any of the following happen:
>
> > Payment Default.  [The borrower] fail[s] to make any payment when due under this Note.
>
> > .  .  .  .
>
> LENDER'S RIGHTS.  Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then [the borrower] will pay that amount.

[Id.]

In his declaration attached to the memorandum in opposition to the Motion for Summary Judgment, Wolfe states that he "made all monthly payments on the mortgage as they became due until the final payment." [Def. Decl. at ¶ 9.]  When the loan matured, Wolfe "offered to continue paying the mortgage as he had been[,]" i.e. to make interest-only payments.  [Id. at ¶ 10.] Wolfe acknowledges that Northern Trust neither extended the terms of the loan nor granted permanent financing, [id. at ¶ 16,] and he states that he "did not oppose the non-judicial foreclosure and has consistently offered to allow a short sale and/or to give a deed in lieu of foreclosure" [id. at ¶ 23].

Thus, based on the record properly before the Court, there are no genuine issues of material fact as to Wolfe's default under the terms of the Note.  The Court therefore FINDS that Wolfe is in default under the terms of the Note.

The relevant terms of the Mortgage vary slightly from the terms of the Note.  The Mortgage states:

29

EVENTS OF DEFAULT.  **At Lender's option**, Grantor will be in default under this Mortgage if any of the following happen:

> Payment Default.  Grantor fails to make any payment when due under the indebtedness.[4]

> . . . .

RIGHTS AND REMEDIES ON DEFAULT.  Upon the occurrence of an Event of Default and at any time thereafter, Lender, **at Lender's option, may exercise** any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

> . . . .

> Judicial Foreclosure.  Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

> Nonjudicial Sale.  If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

> Deficiency Judgment.  If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the

---

4 The term "indebtedness" refers to

> all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

[Roland Aff., Exh. B at 7.]

indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

. . . .

[Roland Aff., Exh. B at 4-5 (emphases added).]

Insofar as the Mortgage provides that Northern Trust may declare Wolfe in default, and may choose from its available remedies upon default, at its option, this Court cannot find that Wolfe is in default under the terms of the Mortgage without evidence that Northern Trust exercised its option by declaring default and electing its remedies. Although the most obvious evidence of these elections, the demand letter, is not properly before this Court, and although the document was available to Northern Trust at the time it filed the Motion for Summary Judgment, Northern Trust's failure to submit the demand letter is not fatal to the Motion for Summary Judgment. Roland states that Northern Trust made "due and proper demand . . . upon Defendant Wolfe for payment of the amounts due and owing to Northern Trust[.]" [Roland Aff. at ¶ 5.] Roland also states that Wolfe is in default under both the Note and the Mortgage. [Id. at ¶¶ 5-6.] Wolfe admits that he was served with a notice of non-judicial foreclosure in early May 2011, and that he did not oppose the non-judicial foreclosure. [Def. Decl. at ¶¶ 22-23.] Further, the Complaint and the First Amended Notice of Pendency of Action, [filed 8/30/11 (dkt. no. 5),] establish that Northern

31

Trust elected to pursue a judicial decree of foreclosure and a deficiency judgment.

Thus, based on the record properly before the Court, there are no genuine issues of material fact as to Wolfe's default under the terms of the Mortgage.  The Court therefore FINDS that Wolfe is in default under the terms of the Mortgage.

### C.    Amounts Due and Decree of Foreclosure

The Motion for Summary Judgment seeks judgment in favor of Northern Trust on all claims in the Complaint.  [Motion for Summary Judgment at 2.]  The Complaint seeks, *inter alia*: 1) a money judgment equal to "the total amount of all principal, interest, advances, costs, expenses, attorneys' fees, and late fees, pursuant to the Note and Mortgage[;]" [Complaint at pgs. 4-5;] and 2) an order directing the sale of the Property and directing the distribution of the proceeds of the sale, first to the reasonable and necessary expenses of the sale, and then to the payment of the amounts due to Northern Trust under the Note and Mortgage [id. at pg. 5].

As evidence of the amount due, Northern Trust submits a Pay-off Statement, dated January 25, 2012 and signed by Roland. It states that:

> The payoff amount on our books and records as of January 25, 2012 . . . is as follows:
>
> Principal                           $ 1,069,079.32
>
> Late fees for periods through       $       27.36

32

|  |  |
|---|---|
| January 25, 2012, but unpaid | |
| Interest accrued through August 30, 2011, but unpaid | $     59,311.934 |
| Interest accrued from August 31, 2011, but unpaid | $     34,444.857 |
| **Total** | **$ 1,162,863.471** |

[Roland Aff., Exh. C (footnotes omitted).]  This amount excludes attorneys' fees and other costs.  [Id. at n.3.]

The Roland Affidavit states that the Pay-off Statement "reflects the current amount due to Northern Trust under the Note and Mortgage."  [Roland Aff. at ¶ 10.]  The Roland Affidavit does not identify the documents that the Pay-off Statement is based upon.  The Roland Affidavit merely states:

All documents or data compilation that are attached hereto as Exhibits "A"-"C", as well as other factual information contained herein, represent records of regularly conducted activity as follows:

a.   The records of acts were and are made in the course of Northern Trust's regular conducted business activity of loan and loan servicing;

b.   All herein referenced records of acts were and are made at or near the time of the acts reported.  Entries into these records are made by Affiant, as well as by persons having personal knowledge of such event.

c.   Northern Trust maintains all records and files in a routine manner in the ordinary course of business in a filing and computer system.

[Id. at ¶ 12.]

At the hearing and in his memorandum in opposition to the Motion for Summary Judgment, Wolfe argued that Roland's purported authentication of the Pay-off Statement was insufficient evidence of the amount outstanding under the Note and Mortgage.  This Court agrees.

First, the Court notes that Wolfe relies primarily on Hawaii Community Federal Credit Union v. Keka, 94 Hawai`i 213, 11 P.3d 1 (2000).  [Mem. in Opp. to Motion for Summary Judgment at 15.]  In Keka, the Hawai`i Supreme Court held that an affidavit from an officer of the credit union, who stated that he was "personally familiar with the payment history of" the Keka's mortgage, was not sufficient to establish a foundation for his statements regarding the Keka's default and the outstanding amount of their indebtedness.  94 Hawai`i at 218, 222, 11 P.3d at 6, 10.  Keka, however, is based upon provisions of Haw. R. Civ. P. 56(e)[5] that do not have a counterpart in Fed. R. Civ. P. 56.

_____

[5] Haw. R. Civ. P. 56(e) states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this
> (continued...)

In spite of this important distinction, the reasoning in <u>Keka</u> is instructive in the instant case.

Fed. R. Civ. P. 56(c)(4) states: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The Roland Affidavit does not explain why Roland is competent to testify as to the amounts outstanding under the Note and Mortgage.  For example, Roland does not state that, in his position, he routinely prepares pay-off statements such as the one attached as Exhibit C, nor does he state that Wolfe's Pay-off Statement is a routinely kept business record, nor does he identify the records which he reviewed or relied upon in preparing the Pay-off Statement.  This Court therefore concludes that Northern Trust has not established that Roland is competent to testify as to the amounts outstanding under the Note and Mortgage.  This Court will not consider the Pay-off Statement or Roland's testimony in the Roland Affidavit

---

[5](...continued)
rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

about the amounts outstanding.  The Court further concludes that Northern Trust has failed to establish the amounts outstanding under the Note and Mortgage.

In light of the unresolved issue regarding the proper plaintiff in this action and Northern Trust's failure to establish the amounts due under the Note and Mortgage, there are genuine issues of material fact which preclude summary judgment at this time.  In addition, although this Order dismisses all of the counts in the Counterclaim, the Order dismisses most of the claims without prejudice.  If Wolfe is able to successfully amend the counts that this Order dismisses without prejudice, such claim may constitute a defense to Northern Trust's claims in the Complaint.  The Court therefore DENIES Northern Trust's Motion for Summary Judgment WITHOUT PREJUDICE.

## II.  **Motion to Dismiss**

In the Motion to Dismiss, Northern Trust urges the Court to dismiss each of the counts in the Counterclaim because each count fails to state a claim that is plausible on its face. See <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Further, to the extent that some of the counts in the Counterclaim sound in fraud, Wolfe has failed to plead these counts with the required particularity.  See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

The Court addresses each of count in the Counterclaim in turn.

A.    **Count I - UDAP**

Count I alleges:

> The false representations as to the terms of the
> loan as well as the loan application, the
> misrepresentations regarding loan modification and
> foreclosure, . . . and the excessive charges, all
> in connection with the above-described extension
> of credit were immoral, unethical, oppressive,
> unscrupulous, and substantially injurious to
> [Wolfe] as a consumer, in violation of H.R.S.
> Chapter 480.

[Counterclaim at ¶ 19.[6]]

First, Count I alleges that the loan broker who Wolfe

worked with was an agent of Northern Trust.  The loan broker

represented that, when the term of the instant loan terminated,

Northern Trust would give Wolfe permanent financing without

requiring Wolfe to re-qualify.  [Id. at ¶¶ 4-5.]  This district

court has recognized:

> In general, a lender is not liable for the
> actions of a mortgage broker unless there "there
> is an agency relationship between the lender and
> the broker." Gonzalez v. First Franklin Loan
> Servs., 2010 WL 144862, at *13 (E.D. Cal. Jan. 11,
> 2010); see also Kennedy v. Wells Fargo Bank, N.A.,
> 2011 WL 3359785, at *2 n.5 (N.D. Cal. Aug. 2,
> 2011) (noting that mortgage broker is generally an
> agent of the borrower, and not that of the lender,
> unless there is an agency relationship); Mangindin
> v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 710 (N.D.
> Cal. 2009) (explaining that "courts have rejected

---

[6] Paragraph 19 includes an allegation regarding the failure
to timely provide documents, but there are no factual allegations
in this case that Northern Trust failed to provide Wolfe with
loan documents on a timely basis.

a bright line rule that a mortgage broker may
never be the agent of a lender").

Under Hawaii law, "[a]n agency relationship
may be created through actual or apparent
authority." See [State v.] Hoshijo ex rel. White,
102 Hawai`i [307,] 318, 76 P.3d [550,] 561
[(2003)] (quoting Cho Mark Oriental Food, Ltd. v.
K & K Int'l, 73 Haw. 509, 515, 836 P.2d 1057, 1061
(1992)).  To establish actual authority, there
must be "a manifestation by the principal to the
agent that the agent may act . . . , and may be
created by express agreement or implied from the
conduct of the parties or surrounding
circumstances.'"  Id. (quoting State Farm Fire &
Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315,
325, 978 P.2d 753, 763 (1999)).  In comparison,
"[a]pparent authority arises when 'the principal
does something or permits the agent to do
something which reasonably leads another to
believe that the agent had the authority he was
purported to have.'"  Cho Mark Oriental Food,
Ltd., 73 Haw. at 515, 836 P.2d at 1061 (quoting
Hawaiian Paradise Park Corp. v. Friendly Broad.
Co., 414 F.2d 750, 756 (9th Cir. 1969)).

Menashe v. Bank of New York, Civil No. 10-00306 JMS/BMK, 2012 WL

397437, at *11 (D. Hawai`i Feb. 6, 2012) (some alterations in

Menashe).

Wolfe has not pled any facts "plausibly suggesting that

any type of agency relationship existed between" Northern Trust

and the loan broker.  See id.  Thus, the Court must dismiss Count

I to the extent that it relies upon alleged misrepresentations by

Wolfe's loan broker.

The remainder of Count I is based upon Wolfe's attempt

to modify the loan after the Note matured.  According to Wolfe,

Northern Trust told him that "they would work out a new loan or

other payment plan as they did not intend to foreclose."

[Counterclaim at ¶ 8.]   The Counterclaim also alleges that

Northern Trust demanded that Wolfe pay $300,000.00 or offer new

collateral to obtain a new loan.   [Id. at ¶ 9.]

In Casino v. Bank of America, this district court

stated:

> The Casinos do not state a claim under
> section 480-2 of the Hawaii Revised Statutes
> because "lenders generally owe no duty to a
> borrower 'not to place borrowers in a loan even
> where there was a foreseeable risk borrowers would
> be unable to repay.'"   McCarty v. GCP Mgmt., LLC,
> 2010 WL 4812763, at *6 (D. Haw. Nov. 17, 2010)
> (quoting Champlaie v. BAC Home Loans Servicing,
> LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009)).
> See also Sheets v. DHI Mortg. Co., 2009 WL
> 2171085, at *4 (E.D. Cal. July 20, 2009)
> (reasoning that no duty exists "for a lender 'to
> determine the borrower's ability to repay the
> loan. . . .   The lender's efforts to determine the
> creditworthiness and ability to repay by a
> borrower are for the lender's protection, not the
> borrower's.'" (quoting Renteria v. United States,
> 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)).
>
> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money."   Nymark v. Heart Fed.
> Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct.
> App. 1991).   Nothing in the Complaint indicates
> that any Defendant "exceed[ed] the scope of [a]
> conventional role as a mere lender of money."   The
> claims fail on that basis alone. . . .

Civil No. 10-00728 SOM/BMK, 2011 WL 1704100, at *12-13 (D.

Hawai`i May 4, 2011).

Similarly, nothing in Wolfe's Counterclaim indicates that Northern Trust exceeded its conventional role as a money lender.  Thus, the portions of Count I based on representations or demands that Northern Trust made when Wolfe sought to modify his loan also fail.

This Court therefore GRANTS the Motion to Dismiss as to Count I.  The dismissal is WITHOUT PREJUDICE because it is arguably possible for Wolfe to cure the defects in Count I by amendment.  See Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009).  The Court GRANTS Wolfe leave to file a motion seeking leaving to file an amended counterclaim that cures the defects in Count I.

**B.    Count II - Unconscionability**

Northern Trust argues that unconscionability is a defense, not an affirmative claim for relief.  Further, even if Wolfe is asserting unconscionability as a defense, he has not identified the specific term of a contract that is allegedly unconscionable.  [Mem. in Supp. of Motion to Dismiss at 9-11.] This district court has recognized that:

> "Unconscionability" is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief.  See, e.g., Gaitan v. Mortg. Elec. Registration Sys., 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009) ("Unconscionability may be raised as a defense in a contract claim, or as a legal argument in support of some other claim, but it does not constitute a claim on its own."); Carey v. Lincoln Loan Co., 125 P.3d 814, 829 (Or. App. 2005)

> ("[U]nconscionability is not a basis for a separate claim for relief."); see also Barnard v. Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct. 27, 2006) (citing numerous cases for the proposition that neither the common law or the UCC allows affirmative relief for unconscionability).
>
> To the extent unconscionability can be addressed affirmatively as part of a different-that is, independent-cause of action, such a claim "is asserted to prevent the enforcement of a contract whose terms are unconscionable." Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original). Skaggs dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," and not any specific contractual term. Id.

Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *12 (D. Hawai`i Jan. 21, 2011) (footnote omitted).

Wolfe states in his memorandum in opposition to the Motion to Dismiss that he is asserting unconscionability as a defense. [Mem. in Opp. to Motion to Dismiss at 10.] Insofar as Wolfe asserted unconscionability as a separate count in the Counterclaim, as opposed to just a defense in his Answer, it appears that he is asserting unconscionability both as a defense to Northern Trust's attempt to enforce the Note and Mortgage and as an independent claim for relief. The issue before this Court in the Motion to Dismiss is whether Wolfe has alleged a plausible independent claim for relief based on unconscionability in Count

II of the Counterclaim.

Wolfe merely alleges that Northern Trust obtained his mortgage under false pretenses and that Northern Trust made unreasonable demands when he tried to modify his loan.  Pursuant to Phillips and Skaggs, Wolfe's claim for unconscionability fails.  This Court therefore GRANTS the Motion to Dismiss as to Count II.  The dismissal is WITHOUT PREJUDICE because it is arguably possible for Wolfe to cure the defects in Count II by amendment.  See Harris, 573 F.3d at 737.  The Court GRANTS Wolfe leave to file a motion seeking leaving to file an amended counterclaim that cures the defects in Count II.

### C.   Count III - Fraud and Misrepresentation

Count III alleges:

> 24.  During the calendar years 2007 and 2010, [Northern Trust] made numerous false representations to [Wolfe] as described in the FACTS above.
> 25.  [Northern Trust] knew or should have known that the (sic) these representations were false and misleading, and that [Wolfe] would rely on these representations and failures to his detriment.
> 26.  [Wolfe] did rely on these representations to his detriment, and was justified in his reliance.
> 27.  As a result, [Wolfe] has been damaged in an amount to be proved at trial.

[Counterclaim at pg. 7.]  In spite of the allegation of "numerous" misrepresentations, the only allegedly false representations identified in the Counterclaim are: the loan broker's representation that Wolfe would receive permanent

42

financing without having re-qualify; and Northern Trust's
representation that it could work out a new loan with Wolfe
because it did not intend to foreclose.  [Id. at ¶¶ 5, 8.]

In a pleading alleging fraud, a plaintiff "must allege
the time, place, and content of the fraudulent representation;
conclusory allegations do not suffice."  Shroyer v. New Cingular
Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010)
(citation omitted).  Wolfe failed to sufficiently plead the time
and place of the alleged misrepresentations, and he failed to
sufficiently plead the identity of the person making the alleged
misrepresentations.  Further, as stated previously, Wolfe failed
to plead a plausible basis for the alleged agency relationship
between the loan broker and Northern Trust.

In addition, this Court has recognized that:

under Hawai`i law, the false representation
forming the basis of a fraud claim "must relate to
a past or existing material fact and not the
occurrence of a future event."  Joy A. McElroy,
M.D., Inc. v. Maryl Group, Inc., 107 Hawai`i 423,
433, 114 P.3d 929, 939 (Ct. App. 2005) (citations
and block quote format omitted) (emphasis in
original).  Further, even if the allegations
satisfy the other elements of a fraud claim,
"[f]raud cannot be predicated on statements which
are promissory in their nature, or constitute
expressions of intention, and an actionable
representation cannot consist of mere broken
promises, unfulfilled predictions or expectations,
or erroneous conjectures as to future events[.]"
Id. (citations and block quote format omitted)
(emphasis in original).  The exception to this
general rule is that "[a] promise relating to
future action or conduct will be actionable,
however, if the promise was made without the

43

present intent to fulfill the promise." Id. (citations and block quote format omitted) (emphasis in McElroy).

Doran v. Wells Fargo Bank, Civil No. 11-00132 LEK-BMK, 2011 WL 2160643, at *12 (D. Hawai`i May 31, 2011). Both the loan broker's alleged promise of permanent financing and Northern Trust's alleged promise that it would work out a new loan deal with future events.

Finally, this Court notes that Wolfe's Counterclaim merely pled conclusory allegations, without supporting factual allegations, about the remaining elements of a fraud or fraudulent misrepresentation claim: the defendant's knowledge that the representations were false (or lack of knowledge whether the representations were true or false); the defendant's contemplation that the plaintiff would rely on the representations; and the plaintiff's detrimental reliance.[7] See Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai`i 461, 482-83, 228 P.3d 341, 362-63 (Ct. App. 2010) (citing Hawaii's Thousand Friends v. Anderson, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989)). For all of these reasons, Wolfe's fraud/fraudulent representation claim fails.

---

[7] The Court acknowledges that, in conjunction with the Motion for Summary Judgment, Wolfe has presented some additional testimony about the facts underlying his claims, but for purposes of the Motion to Dismiss, this Court only considers the contents of the Counterclaim. See Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042, 1055 (D. Hawai`i 2011).

This Court therefore GRANTS the Motion to Dismiss as to Count III.  The dismissal is WITHOUT PREJUDICE because it is arguably possible for Wolfe to cure the defects in Count III by amendment.  See Harris, 573 F.3d at 737.  The Court GRANTS Wolfe leave to file a motion seeking leaving to file an amended counterclaim that cures the defects in Count III.

### D.   Count IV - Negligence

Count IV alleges that: Northern Trust was negligent in making the previously described representations; Northern Trust owed Wolfe a duty of ordinary care in processing his request for loan modification; and Northern Trust had a duty under HAMP guidelines not to go forward with foreclosure proceedings while it was evaluating Wolfe's loan for modification; and Northern Trust's breach of these duties cause Wolfe to suffer damages. [Counterclaim at ¶¶ 30, 32-35.]

> A successful negligence claim must satisfy the following four elements:
>
> 1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>
> 2. A failure on [the actor's] part to conform to the standard required. . . .
>
> 3. A reasonable close causal connection between the conduct and the resulting injury. . . .
>
> 4. Actual loss or damage resulting to the interests of another. . . .

45

> Ono [v. Applegate], 62 Haw. [131,] 137, 612 P.2d
> [568,] 538-39 [(1980)].

White v. Sabatino, 415 F. Supp. 2d 1163, 1173 (D. Hawai`i 2006)

(some alterations in original).

> This district court has recognized that:
>
>> Lenders generally owe no duty of care
>> sounding in negligence to their borrowers.
>> Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1122
>> (D. Haw. 2011); see also Champlaie v. BAC Home
>> Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061
>> (E.D. Cal. 2009) ("[A]s a matter of law, [a]
>> lender [does] not owe a duty in negligence not to
>> place borrowers in a loan even where there was a
>> foreseeable risk borrowers would be unable to
>> pay."); Nymark v. Heart Fed. Sav. & Loan Ass'n,
>> 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Cal.
>> Ct. App. 1991) ("[A]s a general rule, a financial
>> institution owes no duty of care to a borrower
>> when the institution's involvement in the loan
>> transaction does not exceed the scope of its
>> conventional role as a mere lender of money.")

Pagano v. OneWest Bank, F.S.B., CV. No. 11-00192 DAE-RLP, 2012 WL

74034, at *4 (D. Hawai`i Jan. 10, 2012) (footnote omitted).

As previously stated, Wolfe has not presented a

plausible basis for his claim that the loan broker was Northern

Trust's agent.  He therefore cannot maintain a negligence claim

against Northern Trust based on representations that the loan

broker allegedly made.  Further, Northern Trust's alleged

representations that it would work out a new loan with Wolfe and

that it did not intend to foreclose occurred in the course of

Northern Trust's consideration of Wolfe's loan modification

application, a transaction that occurred within the scope of

Northern Trust's conventional role as a money lender.  Wolfe's Counterclaim fails to sufficiently allege that Northern Trust owed him a duty of care as to the alleged negligent misrepresentations during the loan modification process.  See Pagano, 2012 WL 74034, at *4.

Wolfe also argues that, under HAMP, Northern Trust owed him additional duties to process his application for loan modification with ordinary care and to forbear from any foreclosure proceedings while it was considering his application. This district court, however, has rejected UDAP claims based on alleged HAMP violations, ruling that "to the extent Plaintiff asserts that Defendants breached the HAMP guidelines, 'there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP.'"  Rey v. Countrywide Home Loans, Inc., Civil No. 11-00142 JMS/KSC, 2012 WL 253137, at *9 (D. Hawai`i Jan. 26, 2012) (quoting Dodd v. Fed. Home Loan Mortg. Corp., 2011 WL 6370032, at *12 (E.D. Cal. Dec. 19, 2011)).  Wolfe cites Speleos v. BAC Home Loans Servicing, LP, 755 F. Supp. 2d 304, 310-11 (D. Mass. 2010), for the proposition that courts have recognized that HAMP violations may form the basis of a negligence claim.  In Speleos, however, the district court recognized that there was no private right of action under HAMP, but concluded that the plaintiffs alleged a plausible negligence claim because

in Massachusetts, violations of a statute or
regulation may constitute evidence of negligence.
<u>Berish v. Bornstein</u>, 437 Mass. 252, 770 N.E.2d
961, 979 (2002).  A claim for negligence based on
a statutory or regulatory violation can survive
even where there is no private cause of action
under that statute or regulation.  <u>See, e.g.</u>,
<u>Practico v. Portland Terminal Co.</u>, 783 F.2d 255,
265 (1st Cir. 1985) (finding that plaintiffs could
bring a negligence <i>per se</i> claim based on a
violation of Occupational Safety and Health Act
even though the statute did not provide a private
cause of action); <u>Sorenson v. H & R Block, Inc.</u>,
No. 99-cv-10268-DPW, 2002 WL 31194868, at *10,
2002 U.S. Dist. LEXIS 18689, at *29 (D. Mass. Aug.
27, 2002).

755 F. Supp. 2d at 311.

Hawai`i courts also recognize that violations of law

may constitute evidence of negligence.  <u>See, e.g.</u>, <u>State v.</u>

<u>Tabigne</u>, 88 Hawai`i 296, 304, 966 P.2d 608, 616 (1998)

("nonconformity with relevant statutory standards may be

admissible as evidence of negligence in civil cases").  This

rule, however, appears to be limited to Hawai`i law.  <u>See Rapoza</u>

<u>v. Willocks Constr. Corp.</u>, No. 22052, 2004 WL 27460, at *15

(Hawai`i Jan. 2, 2004).  In that case, the Hawai`i Supreme Court

held:

The court's giving of court's instruction no. 4.4,
which stated that the a "violation of law may be
evidence of negligence[,]" necessitated a
designation of what the "law" was.  It is not
reasonable to assume that the jury would be able
to distinguish which jury instructions were "laws"
that would be evidence of negligence.  Therefore,
the court erred in omitting modifying language in
instructions no. 19, 20, 21, 22, 27, 28 and 29
because the omission of "under Hawaii law"
rendered those instructions "prejudicially

48

> insufficient . . . [and] misleading." See
> Tabieros [v. Clark Equip. Co.], 85 Hawai`i [335,]
> 350, 944 P.2d [1279,] 1293 [(1997)].

Id. (some alterations in original).  Wolfe has not identified any

Hawai`i statute or case law stating that violations of any

federal statute or regulation can support a negligence claim,

even where the federal statute or regulation does not provide for

a private right of action, nor is this Court aware of any.

Cf. Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 68, 647 P.2d 713,

720 (1982) ("We find that the federal statutes regulating firearm

sales did not create a duty on a seller in a negligence action

nor did it create a private right of action for damages.").

Wolfe has not identified any Hawai`i statute or case law stating

that HAMP violations in particular can support a negligence

claim, nor is this Court aware of any.  For all of these reasons,

Wolfe's negligence claim fails.

　　　This Court therefore GRANTS the Motion to Dismiss as to

Count IV.  The dismissal is WITHOUT PREJUDICE because it is

arguably possible for Wolfe to cure the defects in Count IV by

amendment.  See Harris, 573 F.3d at 737.  The Court GRANTS Wolfe

leave to file a motion seeking leaving to file an amended

counterclaim that cures the defects in Count IV.

　　**E.**　**Count V - Breach of Contract**

　　　Count V alleges that Wolfe and Northern Trust "had an

oral contract such that [Northern Trust] would suspend any

49

attempts to foreclose upon [Wolfe]'s property and would not re-institute foreclosure proceedings without first notifying Plaintiff." [Counterclaim at ¶ 37.] Wolfe alleges that Northern Trust breached the oral agreement, causing Wolfe to suffer damages. [Id. at ¶¶ 38-39.]

Count V alleges that Northern Trust and Wolfe entered into an oral forbearance agreement. Hawaii's statute of frauds states:

> No action shall be brought and maintained in any of the following cases:
>
> . . . .
>
> (4) Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them;
>
> . . . .
>
> unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized. . . .

Haw. Rev. Stat. § 656-1. Wolfe's Mortgage was an agreement concerning the transfer of an interest in land, and therefore the Mortgage was subject to the statute of frauds. The alleged agreement in which Northern Trust agreed not to exercise its right under the Mortgage to foreclose in light of Wolfe's default and to give Wolfe additional time to either make the final payment or secure other financing is an agreement concerning a

further transfer of interest in land.  Thus, the alleged

forbearance agreement is also subject to the statute of frauds.

Cf. Eckerle v. Deutsche Bank Nat'l Trust, Civil No. 10-00474

SOM/BMK, 2011 WL 4971128, at *3-4 (D. Hawai`i Oct. 18, 2011)

(granting summary judgment to lender on breach of contract claim

where the plaintiff did not produce any writing evidencing the

alleged loan modification agreement).

    The alleged oral forbearance agreement between Northern

Trust and Wolfe is unenforceable.  Wolfe has not alleged a

plausible claim for breach of the oral forbearance agreement,[8]

and he cannot cure the defect in this claim by amendment.  See

Harris, 573 F.3d at 737.  The Court therefore GRANTS the Motion

to Dismiss as to Count V, and DISMISSES Count V WITH PREJUDICE.

    **F.    Count VI - Good Faith and Fair Dealing**

    Count VI alleges that every contract imposes an implied

duty of good faith and fair dealing on the parties to the

contract.  Wolfe alleges that Northern Trust violated its duty of

good faith and fair dealing, causing Wolfe to suffer damages.

[Counterclaim at ¶¶ 41-43.]  Count VI does not clearly state

---

    [8] In the memorandum in opposition to the Motion to Dismiss,
Wolfe argues that Northern Trust breached the agreement that he
would receive permanent financing without having to re-qualify.
[Mem. in Opp. to Motion to Dismiss at 12.]  Count V, however,
specifically refers to the oral forbearance agreement.
[Counterclaim at ¶ 37.]  Thus, the breach of contract claim based
on the loan broker's promise of permanent financing is not before
the Court.

which of Northern Trust's actions constituted a breach of its duty of good faith and fair dealing.

This district court has characterized similar claims as attempts to allege claims for the tort of bad faith.  See, e.g., Phillips, 2011 WL 240813, at *5 (citing Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract)).

> "In Best Place, the Hawaii Supreme Court noted that although Hawaii law imposes a duty of good faith and fair dealing in all contracts, whether a breach of this duty will give rise to a bad faith tort cause of action depends on the duties inherent in a particular type of contract." Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (citing Best Place, 82 Haw. at 129, 920 P.2d at 334). "The court concluded that special characteristics distinguished insurance contracts from other contracts and justified the recognition of a bad faith tort cause of action for the insured in the context of first- and third-party insurance contracts." Id. (citing Best Place, 82 Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in Best Place, requires a contractual relationship between an insurer and an insured." Id. (citing Simmons v. Puu, 105 Haw. 112, 120, 94 P.3d 667, 675 (2004)).
>
> Moreover, although commercial contracts for "sale of goods" also contain an obligation of good faith in their performance and enforcement, this obligation does not create an independent cause of action. See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006). And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special

relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).  It is thus unlikely that Plaintiffs could recover for bad faith as alleged in Count III.

Id. at *5-6 (alterations in original).

To the extent that Wolfe alleges that Northern Trust violated the duty of good faith and fair dealing implied in the oral forbearance agreement, Wolfe fails to state a claim because the oral agreement is not enforceable.  Further, Wolfe cannot cure the defect in this claim by amendment.  See Harris, 573 F.3d at 737.  The Court therefore GRANTS the Motion to Dismiss as to the portion of Count VI based on the implied duty of good faith and fair dealing in the alleged oral forbearance agreement, and DISMISSES that portion of Count VI WITH PREJUDICE.

The only other apparent basis for Count VI is Northern Trust's alleged failure to honor the loan broker's representation that, at the end of the term of the Note, Northern Trust would give Wolfe permanent financing without requiring him to re-qualify.  As previously stated, however, Wolfe failed to plead a plausible basis for his claim that there was an agency relationship between the loan broker and Northern Trust.  Thus, to the extent that Count VI is based on Northern Trust's failure to fulfill the loan broker's promise, Wolfe has failed to plead a plausible claim.  In is, however, arguably possible for Wolfe to

53

cure the defect in this claim by amendment.  See id.  The Court therefore GRANTS the Motion to Dismiss as to the portion of Count VI based on Northern Trust's failure to fulfill the loan broker's promise of permanent financing, and DISMISSES that portion of Count VI WITHOUT PREJUDICE.  The Court GRANTS Wolfe leave to file a motion seeking leaving to file an amended counterclaim that cures the defects in the portion of Count VI based on Northern Trust's failure to fulfill the loan broker's promise of permanent financing.

### G.   Count VII - Promissory Estoppel

Count VII alleges that Northern Trust "made numerous promises to [Wolfe], including, but not limited to, the promise that it would refinance his loan when it came due and would not institute foreclosure proceedings."  [Counterclaim at ¶ 45.] Count VII alleges that Wolfe justifiably relied on these promises to his detriment and that Northern Trust failed to honor these promises, causing Wolfe to suffer damages.  [Id. at ¶¶ 46-48.]

The Hawai`i Supreme Court has stated that:

the four elements of promissory estoppel are:

(1) There must be a promise;

(2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);

(3) The promisee does in fact rely upon the promisor's promise; and

> (4) Enforcement of the promise is necessary to avoid injustice.
>
> In re Herrick, 82 Hawai`i [329,] 337-38, 922 P.2d [942,] 950-51 [(1996)] (quoting 4 R. Lord, A Treatise on the Law of Contracts by Samuel Williston § 8:5, at 85-95 (4th ed. 1992)).  The "essence" of promissory estoppel is "detrimental reliance on a promise."  Ravelo [v. Cnty. of Hawai`i], 66 Haw. [194,] 199, 658 P.2d [883,] 887 [(1983)].

Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Hawai`i 149, 164-65, 58 P.3d 1196, 1211-12 (2002) (footnote omitted).

The alleged promises pled in the Counterclaim are: the loan broker's promise that Northern Trust would grant Wolfe permanent financing without requiring him to re-qualify; and Northern Trust's promise that it would work out a new loan with Wolfe because it did not intend to foreclose.  As previously stated, however, Wolfe failed to plead a plausible basis for his claim that there was an agency relationship between the loan broker and Northern Trust.  As to Northern Trust's alleged promise that it would modify Wolfe's loan and would not foreclose, the Counterclaim does not allege how Wolfe detrimentally relied on Northern Trust's promise.  For all of these reasons, Wolfe's promissory estoppel claim fails.

This Court therefore GRANTS the Motion to Dismiss as to Count VII.  The dismissal is WITHOUT PREJUDICE because it is arguably possible for Wolfe to cure the defects in Count VII by amendment.  See Harris, 573 F.3d at 737.  The Court GRANTS Wolfe

leave to file a motion seeking leaving to file an amended counterclaim that cures the defects in Count VII.

Finally, to the extent that there are allegations in the Counterclaim which this Court has not specifically addressed, the Court finds that those allegations do not provide sufficient support for the counts in the Counterclaim to survive the Motion to Dismiss.

### III. <u>Leave to Amend</u>

The Court has granted the Motion to Dismiss and dismissed all of the counts in the Counterclaim without prejudice, with the exception of Count V and the portion of Count VI based on the implied duty of good faith and fair dealing in the alleged oral forbearance agreement, which this Court has dismissed with prejudice. Wolfe is granted until **June 28, 2012** to file a motion to the magistrate judge which seeks permission to file an amended counterclaim addressing the deficiencies noted in this Order. The Court CAUTIONS Wolfe that, if he fails to timely file a motion seeking leave to file an amended counterclaim, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice. Further, if Wolfe files an amended counterclaim pursuant to leave from the magistrate judge, but the amended counterclaim fails to address the defects identified in this Order, the Court may dismiss such claims with prejudice.

The Court emphasizes that Wolfe is not granted leave to add new parties, claims or theories of liability. If Wolfe wishes to add new parties, claims or theories of liability, Wolfe must either obtain a stipulation from Northern Trust or file a separate motion seeking leave to amend according to the deadlines in the Rule 16 Scheduling Order. The magistrate judge will rule upon such a motion in the normal course. The Court CAUTIONS Wolfe that, if he includes new parties, claims or theories of liability in the amended counterclaim without obtaining either a stipulation or leave from the magistrate judge, the new parties, claims, or theories of liability may be dismissed with prejudice.

## CONCLUSION

On the basis of the foregoing, Northern Trust's Motion for Summary Judgment as to the Complaint Filed Herein on August 30, 2011, Interlocutory Decree of Foreclosure, and Order of Sale, filed January 26, 2011, is HEREBY DENIED WITHOUT PREJUDICE, and Northern Trust's Motion to Dismiss Defendant Kenneth I. Wolfe's Counterclaim, filed December 7, 2011, is HEREBY GRANTED. Specifically, this Court DISMISSES WITH PREJUDICE Count V and the portion of Count VI based on the implied duty of good faith and fair dealing in the alleged oral forbearance agreement. The Court DISMISSES all of the remaining counts in the Counterclaim WITHOUT PREJUDICE.

To the extent that the Court has dismissed some of the counts in the Counterclaim without prejudice, the Court GRANTS Wolfe leave to submit a motion to the magistrate judge seeking permission to file an amended counterclaim addressing those claims. This Court CAUTIONS Wolfe that, if he fails to file his motion by **June 28, 2012**, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice. Further, if Wolfe's amended counterclaim does not address the deficiencies identified in this Order, the claims which this Court has dismissed without prejudice may be dismissed with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

NORTHERN TRUST, NA V. KENNETH I. WOLFE; ORDER GRANTING NORTHERN TRUST'S MOTION TO DISMISS DEFENDANT KENNETH I. WOLFE'S COUNTERCLAIM AND DENYING NORTHERN TRUST'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMPLAINT FILED HEREIN ON AUGUST 30, 2011, INTERLOCUTORY DECREE OF FORECLOSURE, AND ORDER OF SALE