IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

NORTHERN TRUST, NA,               )     CIVIL NO. 11-00531 LEK-BMK
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
KENNETH I. WOLFE,                 )
                                  )
          Defendant.              )
_____   )

**ORDER GRANTING NORTHERN TRUST'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMPLAINT, INTERLOCUTORY DECREE OF FORECLOSURE, AND ORDER OF SALE AND GRANTING NORTHERN TRUST'S MOTION TO DISMISS DEFENDANT KENNETH I. WOLFE'S FIRST AMENDED COUNTERCLAIM**

Before the Court are: Plaintiff/Counterclaim Defendant Northern Trust, NA's ("Northern Trust") Motion for Summary Judgment as to the Complaint Filed on August 30, 2011, Interlocutory Decree of Foreclosure, and Order of Sale ("Motion for Summary Judgment"), filed on August 15, 2012; and Northern Trust's Motion to Dismiss Defendant Kenneth I. Wolfe's First Amended Counterclaim ("Motion to Dismiss"), filed on September 27, 2012.  Defendant/Counterclaimant Kenneth I. Wolfe ("Wolfe") filed a memorandum in opposition to each motion on December 6, 2012.  Northern Trust filed a reply in support of each motion on December 13, 2012.

These matters came on for hearing on January 22, 2013. Appearing on behalf of Northern Trust were Jonathan Lai, Esq., and Michael Bird, Esq., and appearing on behalf of Wolfe was John

Harris Paer, Esq.  After careful consideration of the motions,
supporting and opposing memoranda, and the arguments of counsel,
both motions are HEREBY GRANTED for the reasons set forth below.

<u>**BACKGROUND**</u>

Northern Trust filed the instant action on August 30,
2011 based on diversity jurisdiction.  [Complaint at ¶ 3.]  The
Complaint seeks foreclosure of property securing a loan that
Northern Trust made to Wolfe.

Wolfe filed his Answer to Complaint ("Answer"), with a
Setoff and Counterclaim ("Counterclaim"), on November 17, 2011.
[Dkt. no. 12.]  On May 31, 2012, this Court issued its Order
Granting Northern Trust's Motion to Dismiss Defendant Kenneth I.
Wolfe's Counterclaim and Denying Northern Trust's Motion for
Summary Judgment as to the Complaint Filed Herein on August 30,
2011, Interlocutory Decree of Foreclosure, and Order of Sale,
filed May 31, 2012 ("5/31/12 Order").  2012 WL 1983339.  In the
5/31/12 Order, the Court dismissed all counts in the Counterclaim
without prejudice, with the exception of Wolfe's breach of
contract claim, and the portions of Wolfe's negligence claim
based on the implied duty of good faith and fair dealing in the
alleged oral forbearance agreement, which the Court dismissed
with prejudice.  <u>Id.</u> at *24-25.

Wolfe filed his First Amended Answer and Counterclaim

on September 6, 2012 ("Amended Counterclaim").[1] [Dkt. no. 53.]

The Counterclaim asserts the following claims: unfair and

deceptive acts and practices ("UDAP"), in violation of Haw. Rev.

Stat. Chapter 480 ("Count I"); unconscionability ("Count II");

fraud and misrepresentation ("Count III"); negligence ("Count

IV"); violation of the duty of good faith and fair dealing

("Count V"); and promissory estoppel ("Count VI").

I.   **Motion for Summary Judgment**

Wolfe executed a Promissory Note in favor of Northern

Trust in the principal amount of $1,080,000.00, at an interest

rate of 7.000% ("the Note").  The date of the Note is August 22,

2007.[2] [Motion for Summary Judgment, Aff. of Shawn T. Roland

("Roland Aff."), Exh. A at 1.]  The Note states, in pertinent

part:

> PAYMENT.  I will pay this loan in one principal
> payment of $1,080,000.00 plus interest on
> August 22, 2010.  This payment due on August 22,
> 2010, will be for all principal and all accrued

---

[1] In the 5/31/12 Order, the Court granted Wolfe until June
28, 2012 to file a motion seeking permission to file an amended
counterclaim to address the deficiencies noted in the 5/31/12
Order.  On June 5, 5012, the deadline for Wolfe to file his
motion to amend his counterclaim was continued to August 15,
2012.  [Dkt. no. 37.]  Wolfe filed a Motion to Amend Answer and
Counterclaim on August 15, 2012 [dkt. no. 44,] and Magistrate
Judge Barry M. Kurren granted the motion on August 30, 2012.
[Dkt. no. 50.]

[2] Wolfe, however, alleges that the date of the transaction
at issue in this case was "[o]n or about August 29, 2007[.]"
[Mem. in Opp. to Motion for Summary Judgment, Decl. of Kenneth I.
Wolfe ("Def. Decl.") at ¶ 3.]

> interest not yet paid.  In addition, I will pay
> regular monthly payments of all accrued unpaid
> interest due as of each payment date, beginning
> September 22, 2007, with all subsequent interest
> payments to be due on the same day of each month
> after that. . . .

[Id.]  The Note is secured by a Mortgage on Maniniowali Phase II,

Lot 17, Kailua-Kona, Hawai`i ("the Property").  The Mortgage was

recorded in the Bureau of Conveyances on September 7, 2007 as

Document Number 2007-159365.  [Roland Aff., Exh. B at 1.]

Northern Trust presented an affidavit from Shawn T.

Roland, the Second Vice President for "The Northern Trust Company

as successor by merger to Northern Trust, NA ('Northern Trust

[Company]')."  [Roland Aff. at ¶ 1.]  Roland states that Wolfe is

in default under the terms of the Note and Mortgage because Wolfe

has refused to make his required full payment, in spite of "due

and proper demand made upon Defendant Wolfe for payment of the

amounts due and owing to [Northern Trust ]"  [Id. at ¶¶ 6-10.]

Roland certifies that Northern Trust Company is still the holder

of the Note and Mortgage and that, as of August 6, 2012, Wolfe

owed Northern Trust Company the following amounts:

| | |
|---|---|
| Principal Balance: | $ 1,069,079.32 |
| Interest to 08/30/11: | $    59,311.93 |
| Interest from 08/31/11 to 08/6/12: | $    80,137.01 |
| **TOTAL:** | **$ 1,208,528.26** |

[Id. at ¶ 11, Exh. D (Pay-Off Statement).]  Roland states that

the pay-off amounts were calculated based upon his personal

knowledge, review of copies of Wolfe's Monthly Loan Statements,

review of the current customer account activity statement (the "Loan Ledger") for Wolfe's account, and review of the "entire records and files kept in the ordinary course of [Northern Trust's] business in connection with the Loan." [Roland Aff. at ¶¶ 12-14, Exhs. E and F.] Roland states that, under the terms of the Note and Mortgage, Northern Trust Company is entitled to foreclose upon its first mortgage lien. [Id. at ¶ 24.]

In the instant Motion for Summary Judgment, Northern Trust first addresses this Court's findings in the 5/31/12 Order that (1) Northern Trust failed to establish that it was the proper party to bring the foreclosure action; and (2) Northern Trust failed to establish the amounts due under the Note and Mortgage.

As to the first issue, Northern Trust argues that it is the holder of the Note and Mortgage and the proper party to conduct the foreclosure proceeding.  Northern Trust asserts that, effective October 1, 2011, Northern Trust, NA, merged with and into The Northern Trust Company, with the resulting bank operating under the name of The Northern Trust Company, as evidenced by a Certificate of Merger Number 3485, dated October 1, 2011, and issued by the State of Illinois Department of Financial and Professional Regulation (the "Certificate of

Merger").[3]   Northern Trust argues that, pursuant to the merger,
The Northern Trust Company succeeds to all of the rights and
responsibilities of Northern Trust, NA, as well as all loans
formerly maintained by Northern Trust, NA.  [Mem. in Supp. of
Motion for Summary Judgment at 2, 7-8.]  To support this
assertion, Northern Trust relies upon the Affidavit of Elisa
Mangual, Senior Legal Counsel for Northern Trust.  Mangual states
that she "ha[s] personal knowledge of and [is] competent to
testify" as to the existence and terms of the mortgage, and that
as Senior Legal Counsel, she is "involved with negotiations,
drafting and strategic input" in connection with Northern Trust's
mergers.  [Motion for Summary Judgment, Mangual Aff. at ¶¶ 1-2.]

        Northern Trust argues that Wolfe's failure to make the
full payment required under the Note and Mortgage, and Wolfe's
failure to respond to due and proper demand for the payment of
the amounts owed, constitute default under the Note and Mortgage.
[Mem. in Supp. of Motion for Summary Judgment at 10-12.]
Northern Trust argues that it is entitled to foreclose upon its
first mortgage lien and its interest in the Property and that it
is entitled to its reasonable attorneys' fees and costs
associated with the foreclosure.  [Id. at 15-16.]

---

[3] Northern Trust provides a copy of the Certificate of
Merger as Exhibit A to the Affidavit of Elisa Mangual ("Mangual
Aff.").

Northern Trust argues that Haw. Rev. Stat. §§ 667-1 through 667-4 provide for judicial foreclosure of a mortgage and, based on the pleadings and submissions with the Motion for Summary Judgment, Northern Trust has an enforceable claim. Northern Trust also argues that there are no genuine issues of material fact, and therefore it is entitled to judgment as a matter of law.  In addition, Northern Trust requests the entry of final judgment in its favor on the Complaint pursuant to Fed. R. Civ. P. 54(b), and the entry of a separate judgment on the Counterclaim pursuant to Fed. R. Civ. P. 58.  [Id. at 18.]

A.   **Wolfe's Opposition**

In his memorandum in opposition, Wolfe first argues that Northern Trust is not the proper party in this suit.  Wolfe argues that Fed. R. Civ. P. 25(c) is not controlling because the merger occurred before the Complaint was first served upon Wolfe. As such, Wolfe argues that Rule 17 applies and Northern trust has had more than enough time to "ratify, join or be substituted into the action."  Wolfe therefore argues that Northern Trust does not have standing to prosecute the foreclosure action.  Wolfe emphasizes that Northern Trust has still not provided the Court with a copy of the merger agreement and has thus failed to cure the defects pointed out by the Court in its 5/31/12 Order.  [Mem. in Opp. to Motion for Summary Judgment at 3-4.]

Wolfe next appears to argue that the Court should deny

the Motion for Summary Judgment because of the claims in the Amended Counterclaim.  With respect to his UDAP claim under Haw. Rev. Stat. Chapter 480 (Count I), Wolfe makes several arguments. Wolfe first argues that Kurt Nielson, the loan broker for the transaction at issue, was an agent of Northern Trust.  Wolfe claims that Northern Trust "vouched" for Nielson and told Wolfe that he could rely on Nielson's representation regarding the loan.  [Id. at 4-5; Declaration of Kenneth I. Wolfe ("Wolfe Decl.") at ¶¶ 5-7.]  Wolfe further argues that the following representations by Northern Trust created a likelihood of confusion for a reasonable consumer: 1) Northern Trust represented that Wolfe could obtain permanent financing without having to re-qualify; and 2) Northern Trust represented that it did not intend to foreclose.  Northern Trust failed to honor its representations, and its actions constituted a "bait and switch". [Id. at 5.]  Wolfe argues that Northern Trust could have mitigated the damages by selling the Mortgage Property, but refused to do so.  Wolfe claims this was "unfair, oppressive and injurious."  [Id. at 5-6.]

Wolfe further claims that Northern Trust proceeded with foreclosure "while evaluating Defendant's request for modification in violation of" the Home Affordable Modification Program ("HAMP") guidelines, and that this was an unfair and deceptive practice.  [Id. at 7.]  Wolfe argues that Northern

8

Trust promised Wolfe that it would not foreclose, but did so notwithstanding that promise and the promise of permanent financing.  [Id. at 6.]  Wolfe argues that, in light of Northern Trust's violations of § 480-2, the Note and Mortgage are void pursuant to Haw. Rev. Stat. § 480-12.  [Id. at 8-9.]

As to the unconscionability claim, Wolfe states that this is a defense.  The unconscionable term was the false promise to provide Wolfe with permanent financing without re-qualification.  [Id. at 9.]

As to the fraud and misrepresentation claim, the fraudulent misrepresentations were the 2007 promise of permanent financing without re-qualification and the 2010 representation that Northern Trust was not going to foreclose.  Wolfe argues that these promises were made recklessly and without the intent to fulfill them.  [Id. at 9-10, Wolfe Decl. ¶ 8.]

As to the negligence claim, Wolfe asserts that Northern Trust owed him a duty to be truthful when making representations to solicit his business.  Wolfe argues that, when a bank makes false promises to its customers, it exceeds its role as a mere money lender.  Wolfe further argues that Northern Trust's agreement to undertake Wolfe's loan modification review gave rise to a duty of ordinary care in carrying out that review.  He argues that the fact that there is no private right of action under HAMP does not give Northern Trust a defense to a claim for

9

negligence.  [Id. at 10-11.]

Wolfe further argues that Northern Trust's actions were not in good faith, and he contends that there is a special relationship in this case because of the public interest and the fact that the loan agreement was a contract of adhesion.  Wolfe argues that the Ninth Circuit has recognized, albeit in the context of a Truth-in-Lending Act ("TILA") violation, that all consumers are inherently at a disadvantage in loan and credit transactions.  Wolfe contends that this principle applies even when the case does not involve a TILA violation.  [Id. at 11-12 (citing Semar v. Platte Valley Savings and Loan Ass'n, 791 F.2d 699, 705 (9th Cir. 1986)).]  Wolfe argues that he has corrected the counterclaim to "properly allege agency," and that, thus, Northern Trust's breach of good faith and fair dealing is a defense to the Motion for Summary Judgment.

The promissory estoppel claim is based on Northern Trust's oral promises of that it would grant permanent financing and that it would not foreclose.  Wolfe alleges he justifiably relied on those promises to his detriment.  Wolfe argues that he would not have entered into the transaction if not for the promise of permanent financing without additional qualification requirements.  Wolfe argues that his promissory estoppel claim is a defense to the Motion for Summary Judgment.  [Id. at 12-13; Wolfe Decl. at ¶ 9.]

10

Finally, Wolfe argues that the Roland Affidavit is defective.  Wolfe argues that Roland does not explain why he is competent to testify as to the amounts outstanding, does not say that he routinely prepares pay-off statements, and does not identify the records he reviewed.  Roland states that his calculations were based on "review of the entire records and files," but Northern Trust only attached some records to its Motion for Summary Judgment.  Further, Roland does not identify who made the records, or how he knows that they had personal knowledge of the information in the entries.  [Id. at 14-15.]

### B.   **Northern Trust's Reply**

In its reply in support of the Motion for Summary Judgment ("Summary Judgment Reply"), Northern Trust argues that Wolfe has not identified any genuine disputes as to material facts in this case.  It emphasizes that Wolfe's allegations of an alleged oral forbearance agreement are barred by the statute of frauds and were already dismissed by this Court with prejudice in the 5/31/2012 Order.  [Id. at 4-5.]

Northern Trust further argues that Wolfe's claim that it lacks standing to foreclose is without merit.  Northern Trust notes that Fed. R. Civ. P. Rule 17, upon which Wolfe relies, is inapplicable in the instant case, where the interest was transferred after the complaint was filed.  In such a case, Fed. R. Civ. P. 25(c) is the relevant provision.  [Id. at 6 (citing 7C

C. Wright & A. Miller, Federal Practice and Procedure § 1958 at 553 (1986) ("If an interest has been transferred prior to commencement of the suit Rule 17, . . . is controlling.  After suit is brought, Rule 25(c) becomes the relevant provision.")] Northern Trust notes that under Rule 25(c) substitution is permissive rather than mandated, and the fact that no substitution was made does not affect Northern Trust's substantive right to foreclose under Hawai`i state law.  [Id. at 8-9.]

Northern Trust next addresses Wolfe's argument that failure to produce the merger agreement itself amounts to a failure to prove that Northern Trust is the correct party to litigate the foreclosure.  Northern Trust emphasizes that the 5/31/12 Order did not state that the merger agreement is required, but rather stated that the Court needed evidence regarding when the merger occurred and the terms thereof. Northern Trust argues that the Mangual Affidavit sets forth sufficient admissible evidence of the date and relevant terms of the merger.  Mangual is competent to testify on such matters because, as she states in her affidavit, she is Senior Legal Counsel for Northern Trust.  [Id. at 10-11 (citing Mangual Aff. at ¶¶ 1-4).]

As to Wolfe's arguments regarding Roland's lack of personal knowledge about the documents and failure to identify

those who prepared the documents who did have personal knowledge of them, Northern Trust argues that, in his capacity as Second Vice-President, and consistent with FRCP Rule 56(c) and Federal Rule of Evidence 803(6) regarding authentication of regularly conducted activities, Roland confirms that all documents attached to his affidavit are regularly kept business records made at or near the time of such acts by someone with personal knowledge or from information transmitted by someone with personal knowledge thereof.  As such, Northern Trust has set forth admissible evidence of the amounts owed by Wolfe under the Note and Mortgage.  [Id. at 15-16 (citing Roland Aff. at ¶ 58(a)-(c)).]

Finally, Northern Trust reiterates that Wolfe has failed to raise a genuine issue of material fact as to his default and Northern Trust's right to foreclose.  Northern Trust reiterates that its claim is enforceable under the terms of the Note and Mortgage and pursuant to Haw. Rev. Stat. §§ 667-1 through 667-4.  [Id. at 16-17.]

## II.  Motion to Dismiss

In the Motion to Dismiss, Northern Trust argues that Wolfe's Amended Counterclaim makes essentially the same allegations as the original Counterclaim, fails to address the pleading deficiencies this Court noted in its 5/31/12 Order, and fails to state a plausible claim for relief.  As such, Northern Trust urges the Court to dismiss the Amended Counterclaim.  [Mem.

in Supp. of Motion to Dismiss at 2.]

Northern Trust first argues that Count I (UDAP) is not sufficiently pled.  Wolfe's UDAP claim appears to sound in fraud; however, Count I does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Further, Wolfe has failed to demonstrate that an agency relationship existed between Wolfe and Northern Trust.  Wolfe does not allege that an oral or written agreement existed between Northern Trust and Nielson, thus failing to allege that Nielson was acting under the express actual authority of Northern Trust.  [Id. at 12 (citing Cho Mark Oriental Food Ltd. v. K & K Int'l, 73 Hawai`i 509, 515, 839 P.2d 1057, 1061 (1992)).]  Wolfe has also not alleged that Nielson believed Northern Trust had authorized him to act on its behalf.  Any remaining allegations in Count I were already rejected by this Court in the 5/31/12 Order.  To the extent the Amended Counterclaim relies on the argument that Northern Trust breached an alleged oral agreement not to foreclose, such a forbearance agreement is subject to the statute of frauds, and any claims relying on such allegations must fail as a matter of law and have already been rejected by this Court in the 5/31/12 Order.  Northern Trust urges the Court to dismiss Count I with prejudice.  [Id. at 14-16.]

As to Count II, Northern Trust emphasizes that unconscionability is not an affirmative claim for relief, but

14

merely a defense to the enforcement of a contract or other legal claim.  Even if Wolfe only asserts unconscionability as a defense, he has not identified the specific terms of the mortgage that are unconscionable.  [Id. at 17-18.]

Northern Trust argues that Wolfe failed to plead Count III (fraud and misrepresentation) with particularity.  Count III is presumably based on the same insufficient allegations of misrepresentations set forth in Count I.  The only allegedly false representations identified in the Amended Counterclaim are based upon the claim of an alleged breach of an oral forbearance agreement that was previously dismissed by the Court with prejudice.  [Id. at 19-20; Amended Counterclaim at ¶¶ 7, 20; Wolfe, 2012 WL 1983339, at *12.]

Northern Trust argues that Count IV (negligence) fails because the Amended Counterclaim merely reasserts the allegations set forth in the original Counterclaim that was dismissed by this Court.  Wolfe fails to establish that Northern Trust owed him a duty of care, making only a conclusory allegation that "as agent for both parties, Mr. Nielson and Plaintiff owed Defendant a fiduciary duty as well as a general duty of ordinary care not to make false representations."  [Id. at 21 (quoting Amended Counterclaim at ¶ 57).]  Lenders generally do not owe their borrowers a duty of care because there is no fiduciary duty and no duty sounding in negligence, and the Amended Counterclaim does

not set forth any allegations establishing an exception to these general rules.  Northern Trust and Wolfe merely had an arms-length business relationship.  [Id. at 22-24.]  Finally, even if Wolfe could establish that Northern Trust owed him a duty, he failed to sufficiently plead the remaining requirements of a negligence claim.  Northern Trust therefore urges the Court to dismiss Count IV.  [Id. at 25-26.]

As to Count V (breach of duty of good faith and fair dealing), Northern Trust notes that this Court has previously characterized similar claims for breach of duty of good faith and fair dealing as claims for the tort of bad faith.  The Hawai`i Supreme Court has recognized that, although there is an obligation of good faith in the performance of commercial contracts, the obligation does not create an independent cause of action.  [Id. at 26-27 (citing Wolfe, 2012 WL 1983339, at *23).] To the extent Wolfe's claim in Count V is based on the alleged oral forbearance agreement, this Court has already dismissed that portion of the claim.  [Id.]  With respect to the portion of Count V based upon Northern Trust's failure to honor Nielson's promise that it would give Wolfe permanent financing, the Amended Counterclaim fails to sufficiently plead an agency relationship between Nielson and Northern Trust.  As such, Count V should be dismissed.  [Id. at 27.]

As to Count VI (promissory estoppel), Northern Trust

16

argues that Wolfe has only alleged vague and indefinite promises regarding future refinancing and the lack of foreclosure proceedings.  The promises for a promissory estoppel claim must be clear and unambiguous.  [Id. at 28-29 (citing Aguilar v. International Longshoremen's Union Local #10, 966 F.2d 443, 446 (9th Cir. 1992)).]  Northern Trust therefore urges the Court to dismiss Count VI.  [Id. at 29.]

> A. **Wolfe's Opposition**

Wolfe's memorandum in opposition to the Motion to Dismiss raises the same arguments as in his memorandum in opposition to the Motion for Summary Judgment.

> B. **Northern Trust's Reply**

In its reply in support of the Motion to Dismiss ("Dismissal Reply"), Northern Trust argues that all of Wolfe's claims rely upon the same allegation that Spenser told Wolfe he could rely upon Nielson, that Nielson and Spenser told Wolfe he would get permanent financing when his loan terminated, and that Nielson "was an agent of [Northern Trust.]"  [Dismissal Reply at 4-5 (citing Amended Counterclaim at ¶¶ 6, 7, 41, 46, 49, 55, 64, 69).]  First, Northern Trust reiterates that Wolfe has failed to plead any facts demonstrating that Nielson was Northern Trust's agent, or that Wolfe conducted due diligence to ascertain whether such an agency relationship existed.  [Id. at 5 (citing Cho Mark Oriental Food Ltd., 73 Hawai`i at 518, 836 P.2d at 1063).]

17

Second, to the extent Wolfe's claims rely upon the breach of an alleged oral forbearance contract, this Court has already found that any such agreement would be subject to the statute of frauds and, thus, any claims relying upon such allegations must fail as a matter of law. [Id. at 6 (citing Wolfe, 2012 WL 1983339, at *22.]

Third, Northern Trust argues that the only authority cited in Wolfe's Memorandum in Opposition to the Motion to Dismiss in support of his negligence claim (Count IV) was rejected by this Court in the 5/31/12 Order. Specifically, in the 5/31/12 Order, this Court stated that Hawai`i courts have stated that only violations of Hawai`i law may constitute evidence of negligence. Wolfe has failed to allege any such violations, or any authority supporting a negligence claim based upon a violation of a federal statute or regulation that does not provide for a private right of action. [Id. at 9 (citing Wolfe, 2012 WL 1983339, at *21). Northern Trust thus urges the Court to grant the Motion to Dismiss.

## DISCUSSION

### I.  Motion for Summary Judgment

In the Motion for Summary Judgment, Northern Trust argues that there are no genuine issues of material fact regarding: Wolfe's breach of the Note, Wolfe's breach of the Mortgage, and Northern Trust's entitlement to relief under the

18

terms of those documents.  Northern Trust therefore argues that
it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ.
P. 56(a) (stating that summary judgment is warranted "if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law").

###### A.    <u>Northern Trust's Merger</u>

In the 5/31/12 Order, the Court found that it could not
make a ruling as to whether Northern Trust is the proper party to
litigate the claims at issue based on the evidence proffered by
Northern Trust.  Specifically, the Court found that, while the
Court could infer Shawn T. Roland's personal knowledge and
competence to testify from his position, and could accept his
testimony that a merger occurred between Northern Trust, N.A. and
The Northern Trust Company, his statements did not specify when
the merger occurred or the terms thereof.  <u>Wolfe</u>, 2012 WL
1983339, at *10-11.  Without such information, the Court could
not make a ruling as to whether Northern Trust is the proper
party to foreclose.

To support the instant motion, Northern Trust relies
upon the affidavit of Elisa Mangual and a copy of the Certificate
of Merger issued by the State of Illinois Department of Financial
and Professional Regulation.  [Motion for Summary Judgment,
Mangual Aff., Exh. A.]  In her affidavit, Mangual asserts that
she has personal knowledge and can testify as to the existence

19

and terms of the merger because she is "Senior Legal Counsel [for] The Northern Trust Company, as successor by merger to Northern Trust, N.A." [Mangual Aff. at ¶ 1.]   Further, as Senior Legal Counsel, Mangual states that her duties include "providing regulatory advice regarding Northern Trust's day to day operations and mergers and acquisions.   In connection with Northern Trust's mergers and acquisitions, [she is] involved with negotiations, drafting and strategic input."   [Id. at ¶ 2.]

Mangual's "personal knowledge and competence to testify are reasonably inferred from [her] position[] and the nature of [her] participation in the matters to which [she] swore."   See Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990); see also Fed. R. Civ. P. 56(c).   Based on Mangual's testimony and the copy of the Certificate of Merger provided with her affidavit, this Court can accept that the merger occurred on October 1, 2011.   [Mangual Aff. at ¶ 3, Exh. A (Certificate of Merger).]   Further, in light of Mangual's position as an attorney for Northern Trust, this Court can accept Mangual's testimony that, "as the resulting bank, The Northern Trust Company succeeds by operation of law to all the rights and responsibilities arising from outstanding litigation involving Northern Trust, N.A. [and] all loans formerly maintained by Northern Trust, N.A." [Id. at ¶ 4.]

Wolfe argues that, because Northern Trust has failed to attach the merger agreement itself to the Motion for Summary Judgment, the Court cannot determine the terms of the merger.  It is true that Northern Trust has not produced a copy of the actual merger agreement; however, the Court disagrees that the merger agreement itself is the only way to prove the terms of the merger.  See Home Sav. Of America, F.A. v. Lacher, 159 A.D.2d 235, 236, 552 N.Y.S.2d 214, 215 (N.Y.A.D. 1st Dep't 1990) (acknowledging that " . . . a copy of the merger agreement, or any official document, or an affidavit by anyone with personal knowledge of the facts to attest to the merger" would be sufficient to demonstrate that a merger occurred and the terms thereof.)  In any event, Wolfe has failed to cite any authority to support his assertion that Mangual's affidavit is insufficient to prove the existence, date, and terms of the merger.  As such, because Mangual is competent to testify as to the date and terms of the merger, Northern Trust need not produce an actual copy of the merger agreement for purposes of the instant Motion for Summary Judgment.

The Court therefore FINDS that Northern Trust is the current holder of the Note and Mortgage and, thus, the proper party to litigate the instant foreclosure.

The Court notes that Wolfe further appears to argue that Northern Trust lacks standing because it failed to ratify,

join, or be substituted into the action in accordance with
Federal Rule of Civil Procedure 17(a).  Because the merger
occurred on October 1, 2011, after the complaint was filed on
August 20, 2011, [dkt. no. 1,] however, Federal Rule of Civil
Procedure 25(c) is controlling.  <u>See</u> 7C C. Wright & A. Miller,
Federal Practice and Procedure § 1958 at 553 (1986) ("If an
interest has been transferred prior to commencement of the suit
Rule 17 [is] controlling.  After suit is brought, Rule 25(c)
becomes the relevant provision.").  Under Rule 25(c) substitution
is permissive, rather than mandated.  Thus, the fact that no
substitution was made does not affect Northern Trust's right to
foreclose.

    **B.**    <u>**Default**</u>

In its 5/31/12 Order, the Court found that there are no
genuine issues of material fact as to Wolfe's default under the
terms of the Note and Mortgage.  <u>Wolfe</u>, 2012 WL 1983339, at *12-
13.  Wolfe does not contest that finding in his opposition or in
his Amended Counterclaim.  Thus, based on the record before the
Court, and for the reasons set forth in the 5/31/12 Order, the
Court FINDS that Wolfe is in default under the terms of the
Mortgage and the Note.

    **C.**    <u>**Amounts Due and Decree of Foreclosure**</u>

The Motion for Summary Judgment seeks judgment in favor
of Northern Trust on all claims in the Complaint.  [Motion for

Summary Judgment at 2.]   The Complaint seeks, *inter alia*: 1) a money judgment equal to "the total amount of all principal, interest, advances, costs, expenses, attorneys' fees, and late fees, pursuant to the Note and Mortgage[;]" [Complaint at pgs. 4-5;] and 2) an order directing the sale of the Property and directing the distribution of the proceeds of the sale, first to the reasonable and necessary expenses of the sale, and then to the payment of the amounts due to Northern Trust under the Note and Mortgage [id. at pg. 5].

As evidence of the amount due, Northern Trust submits a Pay-off Statement, dated August 6, 2012 and signed by Roland.   It states that:

> The payoff amount according to the business records and files of [Northern Trust] as of August 6, 2012 . . . is as follows:
>
> Principal Balance                $ 1,069,079.32
>
> Unpaid Accrued Interest at 5%,
> From 7/22/10 Through 8/30/11  $   59,311.93
>
>
> Unpaid Interest Accrued at 8%,
> From 8/31/11 Through 8/06/12  $    80,137.01
>
> **Total                        $ 1,208,528.26**

[Roland Aff., Exh. D (footnotes omitted).]   This amount excludes attorneys' fees and other costs.   [Id. at n.3.]

The Roland Affidavit states that the Pay-off Statement "reflects the current amount due and owing to [Northern Trust] under the Note and Mortgage."   [Roland Aff. at ¶ 12.]   The Roland

Affidavit states that the amounts in the Pay-off Statement were calculated based upon Roland's "personal knowledge, review of the Monthly Loan Statements, review of the Loan Ledger, and review of the entire records and files kept in the ordinary course of [Northern Trust's] business in connection with the Loan and servicing of said Loan." [Id.]  In addition, Northern Trust submits (1) copies of Wolfe's Loan Statements dated September 6, 2007 through September 3, 2010; and (2) a copy of the current customer account activity statement (the "Loan Ledger") for Wolfe's loan.  [Id. at ¶¶ 13-14, Exhs. E & F.]

        The Court finds that Roland's authentication of the Pay-off Statement, Monthly Loan Statements, and Loan Ledger is sufficient evidence of the amount outstanding under the Note and Mortgage.  Fed. R. Civ. P. 56(c)(4) states: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  In his affidavit, Roland states that both the Monthly Loan Statements and the Loan Ledger are "records of acts kept in the course of [Northern Trust's] regularly conducted business and are made at or near the time by someone with personal knowledge or from information transmitted by someone with personal knowledge thereof." [Roland Aff. at ¶¶ 13-14.]  Roland further states he "serves as a custodian of

24

records responsible for keeping and maintaining" the Monthly Loan Statements and the Loan Ledger.  [Id.].  This Court therefore concludes that Northern Trust has established that Roland is competent to testify as to the amounts outstanding under the Note and Mortgage.  The Court thus FINDS that Northern Trust has established the amounts outstanding under the Note and Mortgage, as set forth in the Pay-off Statement.

In light of the foregoing, the Court finds that Northern Trust has met its burden and established a prima facie case that it is entitled to foreclose on the Mortgage.  See Indymac Bank v. Miguel, 117 Hawai`i 506, 520, 184 P.3d 821, 835 (Ct. App. 2008) (explaining that a foreclosure decree is appropriate where four material facts have been established: "(1) the existence of the [loan] Agreement, (2) the terms of the Agreement, (3) default by [mortgagor] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect"); see also Haw. Rev. Stat. § 667-1 (providing for foreclosure by court action).

Under Hawai`i law, foreclosure proceedings are normally bifurcated.  See, e.g., BNP Paribas VPG Brookline CRE, LLC v. White Sands Estates, LLC, Civil No. 09-00191 JMS-BMK, 2012 WL 984890, at *3-4 (D. Hawai`i Mar. 22, 2012); City Bank v. Abad, 106 Hawai`i 406, 412-13, 105 P.3d 1212, 1218-19 (Haw. App. 2005) ("[F]oreclosure cases are bifurcated into two separately

25

appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree; and (2) all other orders.") (quoting <u>Sec. Pac. Mortg. Corp. v. Miller</u>, 71 Haw. 65, 70, 783 P.2d 855, 857 (1989)).

Here, the evidence is undisputed that Northern Trust is entitled to the requested declaratory relief and an interlocutory decree of foreclosure.  Northern Trust's Motion for Summary Judgment as to the Complaint Filed on August 30, 2011 is HEREBY GRANTED.

The Court HEREBY DIRECTS Northern Trust to provide for the Court's approval and signature an appropriate Foreclosure Decree setting forth the necessary terms and conditions to effectuate the foreclosure process.  The parties are to meet and confer in the selection of a proposed foreclosure Commissioner with sufficient experience.  If the parties are unable to agree on a foreclosure Commissioner, each party may propose a foreclosure Commissioner and submit their name and qualifications, and the Court will make the final selection of a foreclosure Commissioner.  A proposed Foreclosure Decree and foreclosure Commissioner should be provided to the Court by **March 1, 2013.**


II.  **Motion to Dismiss**

In the Motion to Dismiss, Northern Trust urges the

26

Court to dismiss each of the counts in the Amended Counterclaim because Wolfe makes essentially the same allegations as the original Counterclaim, fails to address the pleading deficiencies this Court noted in its 5/31/12 Order, and fails to state a plausible claim for relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Further, to the extent that some of the counts in the Amended Counterclaim sound in fraud, Wolfe has failed to plead these counts with the required particularity. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  The Court addresses each of the counts in the Amended Counterclaim in turn.

A.    **Count I - UDAP**

Count I alleges:

> The false representations as to the terms of the
> loan as well as the loan application, the
> misrepresentations regarding loan modification and
> foreclosure, the failure to give documents timely,
> and the excessive charges, all in connection with
> the above-described extension of credit were
> immoral, unethical, oppressive, unscrupulous, and
> substantially injurious to [Wolfe] as a consumer,
> in violation of H.R.S. Chapter 480.

[Amended Counterclaim at ¶ 44.]

First, Count I alleges that Kurt Nielson, the loan broker Wolfe worked with, was an agent of Northern Trust. Nielson represented that, when the term of the instant loan terminated, Northern Trust would give Wolfe permanent financing

27

without requiring Wolfe to re-qualify.  [Id. at ¶ 7.]  This

district court has recognized:

> In general, a lender is not liable for the
> actions of a mortgage broker unless there "there
> is an agency relationship between the lender and
> the broker." Gonzalez v. First Franklin Loan
> Servs., 2010 WL 144862, at *13 (E.D. Cal. Jan. 11,
> 2010); see also Kennedy v. Wells Fargo Bank, N.A.,
> 2011 WL 3359785, at *2 n.5 (N.D. Cal. Aug. 2,
> 2011) (noting that mortgage broker is generally an
> agent of the borrower, and not that of the lender,
> unless there is an agency relationship); Mangindin
> v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 710 (N.D.
> Cal. 2009) (explaining that "courts have rejected
> a bright line rule that a mortgage broker may
> never be the agent of a lender").
>
> Under Hawaii law, "[a]n agency relationship
> may be created through actual or apparent
> authority." See [State v.] Hoshijo ex rel. White,
> 102 Hawai`i [307,] 318, 76 P.3d [550,] 561
> [(2003)] (quoting Cho Mark Oriental Food, Ltd. v.
> K & K Int'l, 73 Haw. 509, 515, 836 P.2d 1057, 1061
> (1992)).  To establish actual authority, there
> must be "a manifestation by the principal to the
> agent that the agent may act . . . , and may be
> created by express agreement or implied from the
> conduct of the parties or surrounding
> circumstances.'" Id. (quoting State Farm Fire &
> Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai`i 315,
> 325, 978 P.2d 753, 763 (1999)).  In comparison,
> "[a]pparent authority arises when 'the principal
> does something or permits the agent to do
> something which reasonably leads another to
> believe that the agent had the authority he was
> purported to have.'" Cho Mark Oriental Food,
> Ltd., 73 Haw. at 515, 836 P.2d at 1061 (quoting
> Hawaiian Paradise Park Corp. v. Friendly Broad.
> Co., 414 F.2d 750, 756 (9th Cir. 1969)).

Menashe v. Bank of New York, Civil No. 10-00306 JMS/BMK, 2012 WL

397437, at *11 (D. Hawai`i Feb. 6, 2012) (some alterations in

Menashe).

To support his claim that an agency relationship existed between Northern Trust and Nielson, Wolfe states in the Amended Counterclaim that, in an August 2007 telephone conversation with Donna Spencer, "an employee of [Northern Trust] and [Northern Trust's] lead broker on the subject loan," Spencer "confirmed that Kurt Nielson was a good friend of hers, a 'good guy', and a 'high quality' person, that the bank had done a lot of business with him and that [Wolfe] could rely on him and on what he said, in general, and particularly regarding the subject loan." [Amended Counterclaim at ¶¶ 5-6.] Wolfe further claims that Spencer repeated these statements about Nielson in subsequent telephone conversations during "the fall of 2008 and winter of 2009," and that Spencer "thereby ratified the promises of Mr. Nielson and ratified the agency relationship between Mr. Nielson and [Northern Trust.]" [Id. at ¶ 19.]

These bare allegations, however, fail to state facts "plausibly suggesting that any type of agency relationship existed between" Northern Trust and the loan broker. See Menashe, 2012 WL 397437 at *11. The mere fact that a Northern Trust employee called Nielson a "good guy" and told Wolfe that he could "rely on him" is simply not enough to establish the actual or apparent authority required to demonstrate an agency relationship. See Hoshijo ex rel. White, 102 Hawai`i at 318, 76

29

P.3d at 561.  Thus, the Court FINDS that Wolfe has failed to adequately allege an agency relationship between Northern Trust and Nielson, and therefore must dismiss Count I to the extent that it relies upon alleged misrepresentations by Nielson.

The remainder of Count I is based upon Wolfe's attempt to modify the loan after the Note matured.  These allegations are unchanged from those rejected by this Court in its 5/31/12 Order. As this Court found in the 5/31/12 Order, nothing in Wolfe's Amended Counterclaim indicates that Northern Trust exceeded its conventional role as a money lender.  Thus, the portions of Count I based on representations or demands that Northern Trust made when Wolfe sought to modify his loan also fail for the reasons stated in the 5/31/12 Order.  See Wolfe, 2012 WL 1983339, at *16-17.

This Court therefore GRANTS the Motion to Dismiss as to Count I.  The dismissal is WITH PREJUDICE.

B.  **Count II - Unconscionability**

Count II of the Amended Counterclaim relies on the same allegations set forth in Wolfe's original Counterclaim, with the additional conclusory allegation, discussed above, that Nielson was an agent of Northern Trust.  [Amended Counterclaim at ¶¶ 47-48.]  Wolfe alleges that Northern Trust obtained his mortgage under false pretenses and that Northern Trust made unreasonable demands when he tried to modify his loan.  As this Court found in

30

its 5/31/12 Order, Wolfe has failed to allege a plausible independent claim for relief based on unconscionability.  See Wolfe, 2012 WL 1983339, at *17-18; see also Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *12 (D. Hawai`i Jan. 21, 2011) (stating that unconscionability is generally a defense to the enforcement of a contract, and is not a proper claim for affirmative relief); Skaggs v. HSBC Bank USA, N.A., 2010 WL 5390127, at *3 (D. Hawai`i Dec. 22, 2010) (dismissing a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," and not any specific contractual term).

This Court therefore GRANTS the Motion to Dismiss as to Count II.  Count II is dismissed WITH PREJUDICE.

**C.   Count III - Fraud and Misrepresentation**

Count III alleges:

> 50.  At all times relevant herein, Kurt Nielson was an agent of [Northern Trust] for purposes of this transaction, and his representations were ratified by [Northern Trust.]
> 51.  During the calendar years 2007 and 2010, [Northern Trust] made numerous false representations to [Wolfe] as described in the FACTS above.
> 52.  [Northern Trust] knew or should have known that the (sic) these representations were false and misleading, and that [Wolfe] would rely on these representations and failures to his detriment.
> 53.  [Wolfe] did rely on these

31

representations to his detriment, and was
justified in his reliance.
        54.  As a result, [Wolfe] has been damaged in
an amount to be proved at trial.

[Counterclaim at pg. 8.]  In spite of the allegation of

"numerous" misrepresentations, the only allegedly false

representations identified in the Counterclaim are: Nielson's

representation that Wolfe would receive permanent financing

without having re-qualify, and Northern Trust's representation

that it could work out a new loan with Wolfe because it did not

intend to foreclose.  [Id. at ¶¶ 7, 20.]  This is merely a

reassertion of the same allegations dismissed by this Court in

the 5/31/12 Order.

        As to the portions of Count III that are based upon

Northern Trust's alleged breach of an oral forbearance agreement,

this Court dismissed all such claims as barred by the statute of

frauds in the 5/31/12 Order.  See Wolfe, 2012 WL 1983339, at *22.

        As to the remaining portion of Count III, based upon

the alleged oral promises made by Nielson, as this Court stated

in the 5/31/12 Order, the false statements forming the basis of a

fraud claim cannot be predicated on statements that are

promissory in nature, and "must relate to a past or existing

material fact."  Id. at *19 (quoting Joy A. McElroy, M.D., Inc.

v. Maryl Group, Inc., 107 Hawai`i 423, 433, 114 P.3d 929, 939

(Ct. App. 2005)).

        Wolfe has failed to cure the defects identified by this

32

Court in the 5/31/12 Order, and again makes only conclusory allegations lacking the particularity required for allegations of fraud.  See Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010).

This Court therefore GRANTS the Motion to Dismiss as to Count III.  The dismissal is WITH PREJUDICE.

### D.    Count IV - Negligence

Count IV alleges that: Northern Trust was negligent in making the previously described representations; Kurt Nielson was a dual agent of both Northern Trust and Wolfe; during calendar years 2007 through 2010 Northern Trust made numerous false representations; Northern Trust and Nielson owed Wolfe a fiduciary duty; Wolfe relied on the previously described representations; Northern Trust owed Wolfe a duty of ordinary care in processing his request for loan modification; and Northern Trust had a duty under HAMP guidelines not to go forward with foreclosure proceedings while it was evaluating Wolfe's loan modification; and Northern Trust's breach of these duties caused Wolfe to suffer damages.  [Counterclaim at ¶¶ 56-63.]

As previously stated, Wolfe has not presented a plausible basis for his claim that Nielson was Northern Trust's agent.  He therefore cannot maintain a negligence claim against Northern Trust based on representations that Nielson allegedly

33

made.  Further, as this Court stated in its 5/31/12 Order, Northern Trust's alleged representations that it would work out a new loan with Wolfe and that it did not intend to foreclose occurred in the course of Northern Trust's consideration of Wolfe's loan modification application, a transaction that occurred within the scope of Northern Trust's conventional role as a money lender.  Wolfe's Amended Counterclaim fails to sufficiently allege that Northern Trust owed him a duty of care as to the alleged negligent misrepresentations during the loan modification process.  See Wolfe, 2012 WL 1983339, at *20.

Wolfe's argument that the Ninth Circuit has recognized, in the context of a TILA violation, that all consumers are inherently at a disadvantage in loan and credit transactions, and that this principle should apply even in non-TILA cases, while imaginative, is likewise unpersuasive.  Wolfe fails to cite a single authority supporting the proposition that this principle should be expanded and applied outside the TILA context.

As such, and for the reasons stated in this Court's 5/31/12 Order, Wolfe's negligence claim must fail.  This Court therefore GRANTS the Motion to Dismiss as to Count IV and dismisses Count IV WITH PREJUDICE.

F.    **Count V - Good Faith and Fair Dealing**

Count V alleges that Nielson acted as an agent of Northern Trust, and that every contract imposes an implied duty

34

of good faith and fair dealing on the parties to the contract.
Wolfe alleges that Northern Trust violated its duty of good faith
and fair dealing, causing Wolfe to suffer damages. [Counterclaim
at ¶¶ 65-67.]  Count V does not clearly state which of Northern
Trust's actions constituted a breach of its duty of good faith
and fair dealing.

    This district court has characterized similar claims as
attempts to allege claims for the tort of bad faith.  See, e.g.,
Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL
240813, at *5 (D. Hawai'i Jan. 21, 2011) (citing Best Place v.
Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996)
(adopting tort of bad faith for breach of implied covenant of
good faith and fair dealing in an insurance contract)).  While
commercial contracts generally involve an obligation of good
faith in their performance and enforcement, this district court
has made clear that the obligation does not give rise to an
independent cause of action outside the insurance contract
context.  See Stoebner Motors, Inc. v. Automobili Lamborghini
S.P.A., 459 F. Supp. 2d 1028, 1037-38 (D. Hawai`i 2006).

    Wolfe has failed to cure the defects in this claim set
forth in this Court's 5/31/12 Order; the Amended Counterclaim is
unchanged except for the addition of the conclusory allegation
that Nielson acted as an agent to Northern Trust.  The Court
therefore GRANTS the Motion to Dismiss as to Count VI for the

35

foregoing reasons and the reasons set forth in the 5/31/12 Order.

Count V is DISMISSED WITH PREJUDICE.

      G.    **Count VI - Promissory Estoppel**

        Count VI reiterates the allegation that Nielson acted

as Northern Trust's agent and alleges that Northern Trust "made

numerous promises to [Wolfe], including, but not limited to, the

promise that it would refinance his loan when it came due and

would not institute foreclosure proceedings."  [Amended

Counterclaim at ¶ 71.]  Count VI alleges that Wolfe justifiably

relied on these promises to his detriment and that Northern Trust

failed to honor these promises, causing Wolfe to suffer damages.

[Id. at ¶¶ 72-73.]

        As previously stated, Wolfe failed to plead a plausible

basis for his claim that there was an agency relationship between

the loan broker and Northern Trust.  Wolfe's allegations in Count

VI are otherwise identical to the allegations in his promissory

estoppel claim that this Court previously dismissed in its

5/31/12 Order.  Thus, for the reasons stated in the 5/31/12

Order, Wolfe's promissory estoppel claim fails.

        This Court therefore GRANTS the Motion to Dismiss as to

Count VI and dismisses Count VI WITH PREJUDICE.

        To the extent that there are allegations in the Amended

Counterclaim which this Court has not specifically addressed, the

Court finds that those allegations do not provide sufficient

support for the counts in the Amended Counterclaim to survive the Motion to Dismiss.

## III. __Rule 56(d) Continuance__

Finally, the Court notes that during the hearing on January 22, 2013, counsel for Wolfe requested that the Court grant an extension of time for Wolfe to respond to the instant motions.  Counsel explained that a large number of new documents were turned over by Northern Trust after Wolfe's oppositions to the instant motions were due.  This request for a continuance was apparently made pursuant to Federal Rule of Civil Procedure 56(d).

Rule 56(d), formerly Rule 56(f), permits a court to continue a summary judgment motion when a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  A party requesting a Rule 56(d) continuance bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion.  See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th Cir. 2004).

Wolfe requests a continuation of the motions to allow him time to review the documents, some of which he claims may

37

contain statements by Spencer related to the issue of whether Nielson was acting as an agent for Northern Trust.  As a preliminary matter, this Court notes that, by the rule's own terms, a continuation under Rule 56(d) is only available for the Motion for Summary Judgment, and not the Motion to Dismiss.  As to the Motion for Summary Judgment, Wolfe has failed to establish that the newly produced documents are essential to opposing the summary judgment motion; there is no indication that granting Wolfe's motion for a continuance would allow for discovery of evidence that would give rise to disputed issues of material fact in the instant case.  As such, this Court DENIES Wolfe's request for a Rule 56(d) continuance.

### CONCLUSION

On the basis of the foregoing, Northern Trust's Motion for Summary Judgment as to the Complaint Filed August 30, 2011, Interlocutory Decree of Foreclosure, and Order of Sale, filed August 15, 2012, is HEREBY GRANTED, and Northern Trust's Motion to Dismiss Defendant Kenneth I. Wolfe's First Amended Counterclaim Filed on September 6, 2012, filed September 27, 2012, is HEREBY GRANTED.  The Court DISMISSES all of the counts in the Amended Counterclaim WITH PREJUDICE.

As stated above, Northern Trust is directed to provide a proposed Foreclosure Decree and foreclosure Commissioner to the Court by **March 1, 2013.**

38

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 31, 2013.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**NORTHER TRUST, NA V. KENNETH I. WOLFE; CIVIL NO. 11-00531 LEK; ORDER GRANTING NORTHER TRUST'S MOTION FOR SUMMARY JUDGMENT AS TO THE COMPLAINT, INTERLOCUTORY DECREE OF FORECLOSURE, AND ORDER OF SALE AND GRANTING NORTHER TRUST'S MOTION TO DISMISS DEFENDANT KENNETH I. WOLFE'S FIRST AMENDED COUNTERCLAIM**